UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. PEDRO ALAMILLO, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 2056 |
| NEDRA CHANDLER, Warden, | ) ) | The Honorable<br>Virginia M. Kendall, |
| Respondent. | ) | Judge Presiding. |

---

## MOTION TO DISMISS
## UNTIMELY PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to 28 U.S.C. § 2244(d)(1)(A), Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, and this Court's order dated June 4, 2008, respondent NEDRA CHANDLER moves this Court to dismiss petitioner's untimely petition for writ of habeas corpus, and states as follows:

1.      Petitioner Pedro Alamillo, identified as prisoner number B50088, is incarcerated at the Dixon Correctional Center in Dixon, Illinois.  He is in the custody of respondent Nedra Chandler, warden of that facility.

2.      Following a 2000 bench trial in the Circuit Court of Cook County, petitioner was convicted of one count of attempted murder and one count of aggravated possession of a stolen motor vehicle, and sentenced to concurrent prison terms of twenty-two years and six years, respectively.  *See* Exh. A, Rule 23 order in *People v. Alamillo*, No. 1-01-4021 (Ill. App. 2003), at 1.

3.     The evidence at trial demonstrated that petitioner entered a victim's vehicle while she was in the process of removing her three grandchildren, and sped away with one of the children still inside.  *Id.* at 1-2.  In the course of his ensuing flight from the police, he swerved the vehicle and accelerated intentionally toward officers chasing him on foot.  *Id.* at 3.

4.     Petitioner appealed his convictions and sentence to the Appellate Court of Illinois, First Judicial District, which affirmed the circuit court on March 31, 2003.  *Id.* at 11.  Petitioner's subsequent petition for leave to appeal (PLA) in the Illinois Supreme Court was denied on October 6, 2003.  *See* Exh. B, Order denying PLA in *People v. Alamillo*, 803 N.E.2d 485 (Table) (Ill. 2003).  Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.  *See* Doc. 8 at 2.

5.     On April 9, 2004, petitioner filed a petition for postconviction relief in the Circuit Court of Cook County, pursuant to 725 ILCS 5/122-1, *et seq.  See* Exh. C, Postconviction petition in *People v. Alamillo*, No. 00-CR-26406.  The court dismissed the petition as frivolous and patently without merit, pursuant to 725 ILCS 5/122-2.1(a)(2), on July 8, 2004.  *See* Exh. D, Order dismissing petition in *People v. Alamillo*, No. 00-CR-26406, at 4.

6.     Petitioner appealed this judgment to the Appellate Court of Illinois, First Judicial District, which affirmed on February 6, 2006.  *See* Exh. E, Rule 23 order in *People v. Alamillo*, No. 1-04-2456 (Ill. App. 2006), at 1-2.  Petitioner filed a

PLA in the Illinois Supreme Court On May 10, 2006.  *See* Exh. F, PLA in *People v.
Alamillo*, No. 102620.  The court denied his PLA on September 27, 2006.  *See* Exh.
G, Order denying PLA in *People v. Alamillo*, 857 N.E.2d 674 (Table) (Ill. 2006).

## The Instant Petition

7.      Petitioner avers that he placed the instant § 2254 petition in the
prison's mail system on April 4, 2008.  (Doc. 8 at 15).  This date constitutes the date
of filing for purposes of the instant motion to dismiss.  *See* Rule 3(d) of the Rules
Governing Section 2254 Cases in the United States District Courts.[1]

8.      Petitioner, recognizing that the petition is untimely, contends that he
should be entitled to equitable tolling because he did not receive timely notice that
the Illinois Supreme Court denied his PLA on postconviction review.  Attached to
the petition are two affidavits: from him and from the attorney who filed his PLA.
Counsel avers that he mailed notice of the court's order to petitioner on October 2,
2006 (Doc. 8 at 9); petitioner contends that he never received the letter (Doc. 8 at 8).
Both parties agree that petitioner wrote to counsel around December 13, 2007,
asking about the status of his case, and that counsel wrote back around December
20, 2007, informing petitioner that the Illinois Supreme Court had denied the PLA
on September 27, 2006.  (Doc. 8 at 8-9).  Petitioner attaches a prison mail log

---

[1] Although petitioner did not precisely comply with the requirements of Rule
3, in that he did not certify that postage had been pre-paid, respondent will not
dispute, for purposes of this motion, that April 4, 2008, constitutes the date of filing.

purportedly supporting his claim that he never received counsel's first letter.  (Doc. 8 at 12).

9.    The following exhibits, relevant to assessing the timeliness of the petition, have been filed as exhibits to this motion:

Exhibit A:    Rule 23 order in *People v. Alamillo*, No. 1-01-4021 (Ill. App. 2003);

Exhibit B:    Order denying PLA in *People v. Alamillo*, 803 N.E.2d 485 (Table) (Ill. 2003);

Exhibit C:    Postconviction petition in *People v. Alamillo*, No. 00-CR-26406;

Exhibit D:    Order dismissing petition in *People v. Alamillo*, No. 00-CR-26406;

Exhibit E:    Rule 23 order in *People v. Alamillo*, No. 1-04-2456 (Ill. App. 2006);

Exhibit F:    PLA in *People v. Alamillo*, No. 102620; and

Exhibit G:    Order denying PLA in *People v. Alamillo*, 857 N.E.2d 674 (Table) (Ill. 2006).

## **ARGUMENT**

The instant petition should be dismissed with prejudice because it was filed more than 9 months late.  Furthermore, equitable tolling is not warranted because petitioner did not diligently pursue his remedies, and nothing prevented him from filing his federal petition on time.

## I.    **The Petition Is Untimely On Its Face.**

Habeas applications by state prisoners are subject to a one-year statute of limitations.  28 U.S.C. § 2244(d).  In cases like petitioner's, the limitations period

4

commences on "the date on which the judgment [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Jones v. Hulick*, 449 F.3d 784, 787 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 940 (2007).[2]  Here, petitioner's conviction became final 90 days after the Illinois Supreme Court denied his PLA.  *Jones*, 449 F.3d at 787 (the time for filing cert. petition in United States Supreme Court is counted even if petitioner does not file such petition).  Thus, the limitations period began to run on January 5, 2004.

Petitioner is entitled to statutory tolling during "[t]he time during which [his] properly filed application for State post-conviction or other collateral review . . . [was] pending." 28 U.S.C. § 2244(d)(2).  Thus, the limitations period was tolled from April 9, 2004 — when petitioner filed his state postconviction petition — through September 27, 2006, when the Illinois Supreme Court denied his postconviction PLA.  *See Jones*, 449 F.3d at 788 (denial of PLA is relevant date); *see also Lawrence v. Florida*, 127 S.Ct. 1079, 1083 (2007) (90-day period for filing cert. petition not counted for statutory tolling purposes).

Between the date petitioner's conviction became final and the date he filed his postconviction petition, 95 untolled days elapsed.  Thus, his petition was due

---

[2]  The other provisions in § 2244(d) — which allow for a different starting date if a state impediment to filing is removed; a new constitutional right is recognized and made retroactive; or a factual predicate for the claim is only discoverable, despite due diligence, at a later date — do not apply here.  *See* 28 U.S.C. § 2244(d)(1)(B-D).

270 days after the state court denied his PLA on postconviction review: on June 25, 2007. Petitioner did not file the petition until April 4, 2008, making the petition more than 9 months late.

## II. Equitable Tolling Is Not Warranted.

Assuming that equitable tolling is available, *see Lawrence*, 127 S.Ct. at 1085 (assuming without deciding that equitable tolling could cure "otherwise untimely claims"), petitioner cannot make the necessary showing here.

At a minimum, he would need to establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (assuming but not deciding that equitable tolling is proper in § 2254 context); *see also Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (calling *Pace* standard "a strict approach to equitable tolling"). Petitioner meets neither requirement.

First, petitioner was not diligent in ensuring the timeliness of his filing because he delayed unreasonably in ascertaining the status of his postconviction PLA. Petitioner waited a full 19 months after filing his PLA on May 10, 2006, to inquire regarding his case. As petitioner's own experience with the Illinois Supreme Court demonstrated, its review process is not so protracted: the court ruled on petitioner's PLA on direct appeal 6 months after its filing. Petitioner should have expected a similar turnaround on his second PLA; thus, waiting 19 months was not reasonable. By itself, petitioner's unreasonable delay in determining the status of his PLA precludes equitable tolling. *Pace*, 544 U.S. at 419

("petitioner's lack of diligence precludes equity's operation"); *see LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (equitable tolling not warranted where petitioner did not inquire into status of PLA for 21 months); *Cousin v. Lensing*, 310 F.3d 843, 848-49 (5th Cir. 2002) (equitable tolling not warranted where petitioner did not inquire into the status of his motion to proceed in forma pauperis for almost two years).

Moreover, petitioner was not diligent in filing his federal petition *after* learning of the PLA's denial. Petitioner knew as of December 2007 that his federal petition was already late, yet he waited almost four months to file it. This delay, added to petitioner's 19-month delay in ascertaining the status of his PLA, clearly demonstrates petitioner's lack of diligence. *See* Pace, 544 U.S. at 419 (holding five-month delay in filing petition after alleged impediment was removed signaled lack of diligence).

Second, petitioner is not entitled to equitable tolling because his mistaken belief that his state postconviction proceedings had not yet concluded was not an "impediment" that prevented him from filing. *See Powell*, 415 F.3d at 728 (impediment must "*prevent* [petitioner] from filing a timely federal petition"). Even if state postconviction proceedings are ongoing, a prisoner "may file 'a protective petition in federal court and ask the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.'" *Powell*, 415 F.3d at 728 (quoting *Pace*, 544 U.S. at 416) (internal punctuation omitted).

Courts have held that because habeas petitioners have this right, even a state court's lengthy delay in rejecting a postconviction petition as improperly filed — which has the effect of negating any statutory tolling anticipated by the prisoner — is not a ground for equitable tolling. *See Powell*, 415 F.3d at 727-28 (denying tolling where state court took two years to dismiss a postconviction petition as successive); *Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004) (denying tolling where state court took three years to declare postconviction petition untimely). The situation is the same where the state court acts quickly but petitioner does not immediately learn of the decision, and, indeed, delayed notice presents less of an "impediment" than delayed ruling because a petitioner can cure the lack of notice by contacting the court or counsel.

In sum, petitioner is not entitled to equitable tolling. His delays — both in following up on his pending PLA, and in filing his federal petition after he learned of the PLA's denial — were unreasonable. Furthermore, the delayed notice did not impede petitioner from filing his petition within the time frame that § 2244(d)(1)(A) allows.

## <u>CONCLUSION</u>

This Court should dismiss petitioner's petition for a writ of habeas corpus with prejudice. Should this Court deny the motion to dismiss, respondent requests thirty days from the entry of this Court's order denying the motion to address the merits of, and any additional procedural defenses to, petitioner's claims in a subsequent submission.

July 3, 2008                                  Respectfully submitted,

                                             LISA MADIGAN
                                             Attorney General of Illinois

                         By:    /s/ Erin M. O'Connell
                                ERIN M. O'CONNELL, Bar #6283650
                                Assistant Attorney General
                                100 W. Randolph Street, 12th Floor
                                Chicago, Illinois 60601-3218
                                PHONE: (312) 814-1235
                                FAX: (312) 814-2589
                                EMAIL: eoconnell@atg.state.il.us

## CERTIFICATE OF SERVICE

      I hereby certify that on July 3, 2008, I electronically filed Respondent's **Motion to Dismiss Untimely Petition for Writ of Habeas Corpus** and the accompanying **Notice of Motion** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, and on the same date mailed copies of these documents via the United States Postal Service to the following non-CM/ECF user:

          Pedro Alamillo, #B50088
          Dixon Correctional Center
          2600 N. Brinton Ave.
          Dixon, IL 61021.

                        /s/ Erin M. O'Connell
                        ERIN M. O'CONNELL, Bar #6283650
                        Assistant Attorney General
                        100 W. Randolph Street, 12th Floor
                        Chicago, Illinois 60601-3218
                        PHONE: (312) 814-1235
                        FAX: (312) 814-2589
                        EMAIL: eoconnell@atg.state.il.us

SECOND DIVISION
March 31, 2003

NOTICE

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same

RECEIVED
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS

2003 NOV -7 PM 4:08

CIVIL APPEALS DIVISION-COC

DOROTHY BROWN
CLERK

No. 1-01-4021

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 00 CR 26406 |
| PEDRO ALAMILLO, | ) | Honorable Vincent M. Gaughan, Judge Presiding. |
| Defendant-Appellant. | ) | |

O R D E R

After a bench trial, defendant Pedro Alamillo was convicted of attempted first degree murder and aggravated possession of a stolen motor vehicle and sentenced to concurrent prison terms of 22 years and 6 years, respectively. Defendant contends on appeal that his conviction for attempted murder of one police officer was inconsistent with his acquittal on a charge of attempted murder against a second police officer in the same incident. Defendant also contends that the trial court erred in sentencing him pursuant to a statutory provision providing for an enhanced sentence for attempted murder when the victim is a peace officer.

At trial, Maria Mundo testified that she was driving at about 8 a.m. on October 9, 2000, with her daughter and three

EXHIBIT A

1-01-4021

grandchildren in her vehicle, a maroon Ford sedan. She parked
and was removing the children from her vehicle when defendant
entered the vehicle and drove away with one of the children still
inside. Mundo chased the vehicle on foot and screamed at
defendant to stop. Cinthia Bettencourt, Mundo's daughter and the
mother of the three children in Mundo's vehicle, corroborated
Mundo's testimony. Bettencourt also stated that she was about to
telephone the police when a police vehicle approached. The
police officer, with Bettencourt in the vehicle, followed
defendant. The officer attempted to stop defendant, but
defendant continued to flee in the direction of downtown Chicago,
and Bettencourt and the officer lost sight of him downtown.

Officer Eric Frenzel testified that he saw Mundo's vehicle,
which met the description in a radio message regarding a stolen
vehicle with a child in it. Frenzel pursued the vehicle onto the
expressway and into downtown Chicago, where he and other officers
unsuccessfully attempted to stop it at Congress Parkway and
Financial Place. With three other officers, he pursued the
vehicle on foot down Financial Place to Van Buren Street, where
defendant was stopped by traffic. Frenzel and the other officers
approached defendant and ordered him to exit the vehicle. When
traffic cleared in front of defendant, he accelerated and then
swerved in the direction of Frenzel. Frenzel fired at the
vehicle and leapt out of its way as it brushed him.

Officer Brian Hansen testified that he and Frenzel

2

1-01-4021

approached defendant when the vehicle he was driving was stopped
at Financial Place and Van Buren Street by traffic.  Defendant
looked at Frenzel and Hansen, accelerated, and steered towards
them.  Hansen ordered defendant to stop and pointed his weapon at
defendant but did not fire for lack of a clear shot.  Hansen then
ran out of the way of defendant's approaching vehicle.  On cross-
examination, Hansen stated that the vehicle came within a foot of
him and that he was more directly in front of defendant's vehicle
than Frenzel was.

Kevin Kennedy testified that he was walking along Van Buren
Street near Financial Place at about 8 a.m. on the date in
question when he saw a maroon Ford sedan approaching rapidly and
sounding its horn.  The vehicle stopped because a vehicle ahead
of it stopped for a red light, and two police officers approached
the maroon Ford and ordered the driver to exit the vehicle.  The
Ford suddenly accelerated and came very close to Officer Frenzel.
Another officer, who had been more directly in front of the Ford,
stepped out of the way as soon as the Ford started to move.
Kennedy saw the Ford move straight ahead to pass the stopped
vehicles ahead of it, and did not see it turn.

Bryant Hasellerig testified that, at about 8 a.m. at Van
Buren Street and Financial Place, he saw four police officers
with weapons drawn speaking to the driver of a red vehicle.
Hasellerig saw the vehicle accelerate in the direction of the
officers.  One of the officers yelled "stop," fired a shot, and

3

1-01-4021

jumped out of the way of the vehicle. Only the officer who had fired was directly in front of the red vehicle.

The parties stipulated to a police officer's testimony on the circumstances of defendant's subsequent arrest upon driving his vehicle into the lobby of a building. They also stipulated that defendant made a statement to detectives while in the hospital but did not sign the written statement the detectives prepared. The parties stipulated that defendant was not under the influence of "self-induced" drugs when the statement was given, but defense counsel would not stipulate that defendant was not under the influence of any drugs since the statement was given in the hospital. In the statement, defendant admitted to taking Mundo's vehicle but denied seeing a child in the stolen vehicle until after he took it. In describing his evasion of the police, defendant stated that he drove at the police officer in front of his vehicle in an attempt to strike him.

Upon the conclusion of the State's case, defendant moved for a directed finding. On the charge of aggravated kidnaping, he argued that he did not know the child was in the vehicle until after he had stolen it and driven some distance. He also argued that he did not secretly confine the child as the statute provides. As to the charges of attempted murder of Officers Frenzel and Hansen, defendant argued that he was not trying to strike any officers but only to evade capture. In support of this, he pointed out that none of the officers was in fact struck

4

1-01-4021

despite stating that they were directly in front of his vehicle.
He also pointed out that Kennedy had testified that defendant did
not turn but drove straight ahead when he accelerated.  Lastly,
defendant argued that the fact that Frenzel's shot broke the side
window of the vehicle instead of the windshield indicates that
Frenzel was not directly in front of the vehicle when he fired.
In short, defendant argued that specific intent to kill both
Frenzel and Hansen would have to be shown for a conviction and
that such intent could not be shown.  The State responded on the
aggravated kidnaping charge that even if defendant did not know
about the child at the time of the theft, he continued to flee
the police after discovering the child's presence.  On the
attempted murder charges, the State responded that all witnesses
had described defendant accelerating his vehicle towards Frenzel
and emphasized defendant's statement where he admitted to
attempting to strike the officers.  The court denied defendant's
motion for a directed finding.

Defendant testified that he had previous drug convictions
and was undergoing drug treatment shortly before the events in
question.  Defendant saw Mundo's vehicle, parked with the engine
running, and drove away in the vehicle.  Defendant did not see
anyone in the vehicle.  Soon thereafter, a police officer ordered
him to pull over, but he did not and continued instead to evade
police.  At Van Buren and Financial Place, Officer Frenzel shot
defendant in his abdomen.  Defendant did not see the officers

1-01-4021

before he was shot.  When an opening in traffic suddenly
appeared, defendant accelerated.  Defendant did not see the
officers and was not attempting to hit them.  After his arrest,
defendant was taken to a hospital.  When detectives spoke with
defendant, he was in pain and distraught.  He had no recollection
of telling the detectives that he intended or attempted to strike
any officers with his vehicle.  While in the hospital, he was
given pills every two hours and was drowsy.

In rebuttal, the State called Leslie Emert, a nurse who had
taken care of defendant in the hospital.  She testified that on
the day of his statement, she had not given defendant any
medication and he was alert and aware when she spoke with him.
The State also called one of the detectives who had taken
defendant's statement, who stated that defendant did not appear
drowsy, answered questions coherently, and did not receive any
medication while he was present.

At the conclusion of the evidence and closing argument, the
court found defendant guilty of aggravated possession of a stolen
motor vehicle and of the attempted murder of Officer Frenzel.
Defendant was found not guilty of aggravated kidnaping and of the
attempted murder of Officer Hansen.  On the latter point, the
court specifically found that Hansen was far enough away from
defendant's vehicle that an intent to kill could not be found
beyond a reasonable doubt.

Defendant filed a posttrial motion, arguing that the facts

1-01-4021

did not sustain a finding that defendant intended to kill Officer
Frenzel since Frenzel was not injured despite his proximity to
the vehicle and since a witness had seen defendant accelerate
straight ahead rather than turning towards any officers.  Also,
defendant requested that he be found guilty of attempted murder
and not attempted murder of a peace officer in order to qualify
for "day to day time."  The court denied the motion.

At sentencing, the State argued for a sentence close to the
maximum, pointing to defendant's seven prior felony convictions,
the serious nature of the attempted murder conviction, and his
street gang membership.  Defendant's mother testified that
defendant's prior convictions were all for drug offenses, that he
was an addict, and that he had never previously tried to hurt
anyone.  Defendant requested the minimum sentence of 20 years.
The court sentenced defendant to 22 years in prison for attempted
first degree murder of a peace officer and 6 years' imprisonment
for aggravated possession of a stolen motor vehicle, to be served
concurrently.

Defendant first contends that his conviction for the
attempted murder of Officer Frenzel was inconsistent with his
acquittal on a charge of attempted murder against Officer Hansen.

Inconsistent verdicts have been defined by the supreme court
as verdicts on two crimes arising out of the same set of facts if
the verdicts necessarily involve the conclusion that the same
essential element of each crime was both present and absent.

1-01-4021

People v. Frias, 99 Ill. 2d 193, 198 (1983).  Legally

inconsistent verdicts suggest confusion or misunderstanding by

the jury, and are therefore unreliable as a matter of common

sense and sound logic.  People v. Klingenberg, 172 Ill. 2d 270,

281 (1996).  However, in a bench trial, if there is a rational

basis for the court's judgment and an examination of the record

as a whole indicates that there was no confusion, legally

inconsistent findings by a trial judge may stand.  People v.

Rhoden, 299 Ill. App. 3d 951, 961 (1998).  Also, where intent is

an essential element of two crimes but the crimes are directed at

different victims, a finding of intent towards one victim is not

necessarily inconsistent, either legally or logically, with a

finding of lack of intent towards the other victim.  People v.

Billups, 318 Ill. App. 3d 948, 955 (2001); People v. Lozano, 316

Ill. App. 3d 505, 513 (2000).

Here, all the State's witnesses agreed that Officer Frenzel

was endangered by defendant's acceleration.  In fact, Frenzel

testified that he was actually "brushed" by the vehicle as he

leapt out of the way.  But the evidence was divided as to whether

Officer Hansen was similarly at risk.  There was therefore a

rational basis for the court to conclude that defendant intended

to kill Frenzel but not Hansen.  Putting it another way, a finder

of fact could reasonably conclude on this record that defendant's

intent to kill Frenzel was proven beyond a reasonable doubt but

his intent to kill Hansen was not sufficiently proven.  Most

8

1-01-4021

significantly, the trial court specifically found in its judgment that "Hansen was at a distance far enough away that the specific intent towards him was not proven beyond a reasonable doubt." Such a clear finding on the point in question is the antithesis of the confusion that is the concern with legally inconsistent verdicts or findings.

Defendant also contends that his sentence for attempted murder of Officer Frenzel was in error, in that it was enhanced under a statute that refers to a "murdered individual" when Frenzel was not killed.

Defendant was sentenced under section 8-4(c)(1) of the Criminal Code (Code) (720 ILCS 5/8-4(c)(1) (West 2000)), which provides that attempted first degree murder is a Class X felony and further states that the sentence for attempted first degree murder is from 20 to 80 years' imprisonment if the aggravating factor in section 9-1(b)(1) of the Code (720 ILCS 5/9-1(b)(1) (West 2000)) is present.  Section 9-1 concerns first degree murder, and paragraph (b)(1) enhances the sentence for murder if "the murdered individual was a peace officer *** killed in the course of performing his official duties, to prevent the performance of his official duties, or in retaliation for performing his official duties, and the defendant knew or should have known that the murdered individual was a peace officer."

Penal statutes are to be strictly construed in favor of the accused, which means that if the statutory language is capable of

9

1-01-4021

two constructions, the construction favoring the accused is to be
adopted.  <u>People v. Baaree</u>, 315 Ill. App. 3d 1049, 1052-53
(2000).  However, construing ambiguous penal statutes leniently
does not justify overriding the legislature's clear intent.  <u>In
re B.C.</u>, 176 Ill. 2d 536, 551 (1997).  The primary rule of
statutory construction is to ascertain and effect the legislative
intent in enacting the statute.  Statutory provisions must be
read to give every word and phrase meaning, and should not be
read in a manner that renders them meaningless, inoperative, or
superfluous.  <u>People v. Ellis</u>, 199 Ill. 2d 28, 39 (2002).

The purpose of section 8-4(c)(1) is to establish the
sentence for attempted first degree murder.  The clear purpose of
the reference in section 8-4(c)(1)(A) to section 9-1(b)(1) is to
increase the sentence for attempted murder where the victim was a
peace officer performing his or her duty and the accused knew or
should have known the victim was a peace officer.  The language
in section 9-1, including the "murdered individual" language in
question, must be read in that context.

If the existence of a murdered individual was a prerequisite
to a sentence enhancement for attempted murder, as defendant
contends, then section 8-4(c)(1)(A) could never apply since it
concerns only attempted murder, where inherently there is no
murdered individual.  The legislature's clear intent would be
thwarted if the statute were so construed.  More importantly, the
legislature would have adopted meaningless and superfluous

10

1-01-4021

statutory language in enacting section 8-4(c)(1)(A).  Defendant's interpretation is thus not a viable construction of the statute.

The alternative is to consider the reference to a "murdered individual" in section 9-1(b)(1) as referring to a living victim of attempted murder when applied through section 8-4(c)(1)(A). While defendant's interpretation renders a statutory provision utterly superfluous, this construction finds meaning in the "murdered individual" language.  It is also consistent with the legislative intent noted above.  We therefore interpret the language in section 9-1(b)(1) concerning a "murdered individual" to refer to a living victim of attempted murder when section 9-1(b)(1) is cited in section 8-4(c)(1)(A).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

BURKE, J., with McBRIDE, P.J., and CAHILL, J., concurring.



803 N.E.2d 485 (Table)                                                      Page 1
205 Ill.2d 591, 803 N.E.2d 485 (Table), 281 Ill.Dec. 81
**(Cite as: 205 Ill.2d 591, 803 N.E.2d 485, 281 Ill.Dec. 81)**

(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)

Supreme Court of Illinois
People
v.
Pedro Alamillo
**NO. 96103**

SEPTEMBER TERM, 2003
October 07, 2003

Lower Court: No. **1-01-4021**

Disposition: Denied.

205 Ill.2d 591, 803 N.E.2d 485 (Table), 281
Ill.Dec. 81

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



EXHIBIT B

IN THE
CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

RECEIVED

2004 APR -9 AM 9: 14

CLERK

VERIFIED PETITION

FOR

POST CONVICTION RELIEF

NOW COMES PEDRO ALAMILLO, PETITIONER, <u>PRO</u> <u>SE</u>, and respectfully petitions this Honorable Court for Post-Conviction Relief pursuant to, and in accordance with 725 ILCS 5/122-1 et seg., (2004)...............

PETITIONER ACCORDINGLY SEEKS THE FOLLOWING RELIEF:

1. APPOINTMENT OF COUNSEL;

2. A HEARING ON THIS PETITION;

3. AN EVIDENTIARY HEARING;

4. THE VACATION OF HIS CONVICTION AND SENTENCE;

5. A NEW TRIAL AND SENTENCING HEARING.

EXHIBIT C

C19

IN SUPPORT THEREOF, THE PETITIONER STATES AS FOLLOWS:     *RECEIVED*

1. Name of Petitioner:  <u>PEDRO ALAMILLO</u>

2. Place of Confinement:  <u>MENARD CORRECTIONAL CENTER</u>

3. Inmate Register Number:  <u>B50088</u>

4. Date and Location of Offense:  <u>OCTOBER 9, 2000 IN CHICAGO, IL</u>

5. Indictment Returned by Grand Jury On:  <u>NOVEMBER 6, 2000 (7) Counts</u>

6. Place of Trial, and Date:  Cook County Criminal Courts Bldg
   2600 S. California Av
   Chicago, IL. 60608

7. Indictment Number:  <u>00-CR-26406-01</u>

8. Judge Presiding:  <u>HONORABLE VINCENT GAUGHAN</u>

9. Type of Trial:  <u>BENCH</u>

10. Name of Trial Counsel:  <u>DAVID WIENER</u>

11. Name of Prosecuting Attorney:  <u>CLARISSA PALERMO & MR.AHERN</u>

12. Date of Conviction:  <u>AUGUST 13,2001</u>

13. Date of Sentencing:  <u>OCTOBER 5, 2001</u>

14. Length of Sentence:  <u>22 Years and 6 Concurrent</u>

15. A Timely Notice of Appeal was filed on:  <u>OCTOBER 12, 2001</u>

16. Disposition of Direct Appeal.  On March 31, 2003, The Appellate
    Court First District issued aRule 23 order Affirming Appellant's
    Conviction and Sentence.

17. Appellate Attorney:  <u>Andrea Monsees</u>- Cook County Public Defender

18. Petitioner was also represented by Ms. Monsees on Petition For
    Leave To Appeal.

19. <u>Post Conviction</u> : This is Petitioner Pedro Alamillo's initial
    post conviction petition for Post Conviction Relief and is
    therefore timely and contains factual allegations of violations
    of the United States Constitution and Illinos Constitution,
    moreover, this petition states the 'GIST' of a Constitutional
    Claim and therefore warrants an "Evidentiary Hearing", and
    then a New Trial **and Sentencing** Hearing.

-2-  C20

## CLAIMS FOR REVIEW

CLAIM-I                                                              PAGE

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE
ASSISTANCE OF COUNSEL BY FAILING TO BE COUNSEL OF CONSTITUTIONAL
STANDARDS IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION, AND ARTICLE I, § 8, OF THE CONSTITUTION OF
THE STATE OF ILLINIOS OF 1970.                                        5

    A.) COUNSEL FAILED TO SUBJECT THE STATE'S CASE TO A MEAN-
        INGFUL ADVERSARIAL TEST AND FILE MOTION TO SUPPRESS
        A SO-CALLED VOLUNTARY STATEMENT.                             5

    B.) COUNSEL FAILED TO INVESTIGATE AND INTERVIEW DOCTOR AND
        NURSES INVOLVED IN THE MEDICAL TREATMENT AND MEDICATION
        ADMINISTERED, AND PRESENT EVIDENCE TO SUPPORT EVIDENCE
        OF INVOLUNTRINESS OF STATEMENT.                              7

    C.) COUNSEL WAS INEFFECTIVE FOR STATING IN OPENING STATE-
        MENTS THAT PETITIONER "ACKNOWLEDGES STATEMENT TO BE
        ACCURATE", THEN ARGUE THAT STATE COULD NOT PROVE THE
        "ELEMENT" OF "INTENT" TO THE CHARGE OF ATTEMPTED
        MURDER OF A POLICE OFFICER, WHERE STATEMENT SPECIFI-
        CALLY SAID, "I TRIED TO HIT THE OFFICERS WITH THE CAR",
        AND THE PETITIONER TOLD COUNSEL THAT HE NEVER MADE
        STATEMENT.                                                   8

    D.) COUNSEL WAS INEFFECTIVE FOR STIPULATING TO STATEMENT
        BEING ENTERED INTO EVIDENCE, AND THEN, THAT PETITIONER
        WAS NOT UNDER THE INFLUENCE OF ANY SELF-INDUCED DRUGS
        AT THE TIME OF THE STATEMENT.                                9

                STATEMENT OF AUTHORITY                          9


CLAIM-II

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL
WHEN THE PROSECUTOR TOLD THE COURT THAT PETITIONER IS A MEMBER
OF A STREET GANG, WHERE EVIDENCE WAS NOT RELEVANT NOR CONNECTED
TO CRIME CHARGED, NOR WAS AVAILABLE TO PROSECUTION IN DISCOVERY,
THEREFORE VIOLATING THE FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION, AND ILLINIOS CONSTITUTION OF 1970.                     10


                STATEMENT OF AUTHORITY                          11

C21

CLAIN-III                                                                                    PAGE

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT
DIRECT APPEAL BY HIS APPELLATE ATTORNEY'S FAILURE TO RAISE THESE
ISSUES IN THE DIRECT APPEAL, THUS DEPRIVING PETITIONER OF HIS
CONSTITUTIONAL RIGHTS AS PROVIDED BY THE FIFTH, SIXTH, AND FOUR-
TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE
1, § 8, OF THE ILLINOIS CONSTITUTION OF 1970                                    11


                        STATEMENT OF AUTHORITY                              12


CONCLUSION:                                                                    12

CLAIM - I

20. PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE EFFEC-
    TIVE ASSISTANCE OF COUNSEL BY FAILING TO BE COUNSEL OF
    CONSTITUTIONAL STANDARDS IN VIOLATION OF THE SIXTH AMENDMENT
    OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, § 8, OF THE
    ILLINOIS CONSTITUTION OF 1970, In That:


A.) COUNSEL FAILED TO SUBJECT THE STATES CASE TO A MEANINGFUL
    ADVERSARIAL TEST AND FILE MOTION TO SUPPRESS A SO-CALLED
    VOLUNTARY STATEMENT.

    Petitioner states that counsel was ineffective in failing to
subject the State's case to meaningful adversarial test by first
failing to familiarize himself with the facts and circumstances
surrounding the taking of a so-called 'unsigned' voluntary state-
ment where petitioner had surgery to remove bullets from his ab-
domen after being shot by police officers. Petitioner asserts that
he was administered anesthesia prior to surgery to remove said
bullets and was given powerful pain medications at two hours inter-
vals after said surgery while in recovery, and at some point, while
he was sleeping and under the influenc of powerful pain killers,
was awakened by detectives, and asked if he wanted to answer some
questions, that petitioner repeatedly told detectives that he did
not want to talk, that he was in pain, and that his mind was 'dis-
traught'. That detectives continued to pressure him for a statement
even after he adamantly refuse to answer their questions. Petitioner
also states that while these detective continued in their attempt
to get him to talk, a nurse entered the room to give him medication,
and that he asked her to have the officers to leave because he was
not feeling well and did not want to talk to them, but the nurse
left the room without responding to his request. The detectives,
then asked him again to answer questions, at that point he asked
for an attorney, and detectives still continued to question him,
but finally left. That he made no statement. (Exhibit #1)
    Petitioner states that he advised his attorney (David Wiener)
of the above-mentioned facts and circumstances. That after advising
of these facts, that just prior to trial his attorney told him that
"if we go to trial, this is what you are going to say", that,"you
really don't remember the questions they were asking", "but you do
remember them coming into the room".(Exhibit #1)

-5-

Petitioner states that after his attorney advised him of what he (Wiener) wanted petitioner to say, petitioner asked him, "are you sure you want me to say this"? "Because I did not make any statement to the detectives". Mr. Wiener then said, "Listen to _me_, if you want to beat this".

Here, counsel first committed misconduct, in violation of, 720 ILCS 5/33-3(a)and(b), by intentionally performing an act that he knew was in contrast to his duties required by law, and knowingly performed an act that he knows is forbidden by law to perform, i.e., presenting facts to a tribnual that was not true. These acts are also in violation of the Rules of Professional Standards setforth by the Supreme Court. RPC Rule 3.3(a) 1,4,& 5.

Furthermore, counsel, under these circumstances had a duty to test the voluntariness of this so-called voluntary 'unsigned' statement, especially having been made aware that his client had had surgery, had been given anesthesia, and powerful pain killers after the surgery, prior to, and according to petitioner, even while the detectives were attempting to obtain a statement while the petitioner was in an 'Altered State' of mind. This, perhaps, more than anything should have 'alerted' the attorney or put the attorney on notice that an investigation is warranted surrounding the 'Facts and Circumstances' centering, and around the taking of said statement, and failure to do so under these circumstances amounted to deficeint performance, which prejudiced the petitioner where the so-called statement stated that the petitioner said that he was trying to hit the police officers with the car. Had petitioner's attorney filed a motion to suppress statement prior to trial, there is a great probability that the motion would have been granted, and the Court's finding on the charge of Attempted Murder on a police officer may have been different. Thus, failure to file motion to suppress prior to trial can not be deemed as 'Trial Strategy' under counsels theory that petitioner had "No Intent" to run the officers over with the vehicle.

Under the statutes governing Post Conviction Petitions, the allegations setfoth in the petition are to be taken as true where supported by the record, or affidavits. Petitioner has attatched

-6-



a sworn affidavit to support this claim. Thus, it is self-apparent
that petitioner is not able to obtain an affidavit from his former
attorney do to these allegations, therefore an evidentiary hearing
will be necessary in order to determine if Counsels performance
fell below an objective standard, and therefore, cause prejudice
to petitioner.


B.) COUNSEL FAILED TO INVESTIGATE AND INTERVIEW DOCTOR AND NURSES
    INVOLVED IN THE MEDICAL TREATMENT AND MEDICATIONS ADMINISTERED
    AND PRESENT EVIDENCE TO SUPPORT EVIDENCE OF INVOLUNTARINESS OF
    STATEMENT.

    Petitioner asserts that his attorney failed to investigate and
interview the Doctor that performed the surgery to asertain what
medications had been given to petitioner prior to surgery, and the
medication prescribed to be given during recovery, and what, if any,
affect they would have on a persons judgement and ability to make
a conscience decision to wave his rights. Furthermore, counsel fail-
ed to investigate the nurse who administered the pain medications
to petitioner, and failure to do so deprived petitioner of an opp-
urtunity to prove the involuntariness of the so-called statement.

    Here, after petitioner advised counsel that he did not make
a statement to detectives, counsel had a duty to go and interview
the Doctor and nurses that provided medical attention to petitioner.
An investigation of these persons would have revealed pertinent
information that would have contradicted the detectives account
of the voluntariness of the statement allegedly made to them by the
petitioner. Other important iformation that an investigation would
have determine would have diclosed the time that the officers were
allowed to see the the petitioner after the surgery, who gave them
permission to go into the room to question petitioner, because as
a matter of medical safety, any visitors wanting to see the patient
after surgery and while in recovery must have permission from the
attending physician or nurse in charge. Because their was no inves-
tigation at all, in this instance, amounted to deficient perform-
ance, thereby causing prejudice to petitioner. Counsel's failure
to investigate and present the evidence which would result from
such investigation can not be said that such investigation would not
have changed the outcome of the trial.

-7-   C25

C.) COUNSEL WAS INEFFECTIVE FOR STATING IN OPENING STATEMENTS THAT
    PETITIONER "ACKNOWLEDGES STATEMENT TO BE CORRECT", THEN ARGUE
    THAT STATE COULD NOT PROVE THE ELEMENT OF"INTENT" TO CHARGE OF
    'ATTEMPT MURDER OF A POLICE OFFICER'; WHERE STATEMENT SPECIFI-
    CALLY SAID,"I TRIED TO HIT THE OFFICERS WITH THE CAR"; WHERE
    PETITIONER TOLD COUNSEL HE NEVER MADE STATEMENT.


     Counsel for petitioner, during 'opening statements' stated
that petitioner "Acknowledges statement to be correct", and then
argue to the Court that the State could not prove the element of
'Intent' to the charge of 'Attempted Murder' of a police officer,
where the statement specifically states "I tried to hit the off-
icers with the car"; where petitioner told counsel that he never
made that statement, and for counsel to concede that petitioner
adopted this statement was 'Grave Error' that was so prejudicial
to petitioner that this statement undermined counsels own theory
that petitioner did not have the 'Mens Rae' (Intent) to ever hit
the officers with the vehicle.              Tr. Trans. A-8.
     Here, counsel for the petitioner, essentially told the Court
that the 'So-Called' voluntary statement 'allegedly' given by the
petitioner, was acknowledged by his client to be a 'True and Acc-
urate'. Nothing could be further from the truth. (Petitioner in-
corparates the facts setforth in CLAIM-1(A) of this petition to
also support this claim. Although petitioner testified that he did
not remember telling officers that "He tried to hit the officers
with the car", under the 'Direction' of his attorney, this was in
direct contradiction to counsels statement that petitioner "Ack-
nowledges the statement to be accurate. (Exhibits # 1,   and Tr.
trans. C-28). Counsel again coceeded to the accuracy of this state-
ment in closing, (Tr.Trans. C-8), and even conceeded that there
was in fact a statement made. Thus, petitioner's consistent dec-
larations to counsel was undermind by counsel's statements that
"there was a statement made", and "Defendant acknoweledges the
statement to be accurate" greatly prejudiced pititioner, where
petitioner told his attorney that he never made a statement.


                              -8-

                         C26

D.) COUNSEL WAS INEFFECTIVE FOR STIPULATING TO STATEMENT BEING
    ENTERED INTO EVIDENCE, AND THEN, THAT PETITIONER WAS NOT
    UNDER THE INFLUENCE OF OF ANY SELF-INDUCED DRUGS AT THE
    TIME OF THE STATEMENT.

    Here, counsel for petitioner stipulated and agreed to this
statement being entered into evidence, and thereby, sabotaging
petitioner's defense that he never tried to, nor intended to
hit police officers with the vehicle. For counsel to put on a de-
fense that the petitioner never tried to hit the officers, and
that he never had the 'Intent' to do so was in direct contradic-
tion to his actions here. It is a conflict, as well as, inconsis-
tant theories to say that the defendant didn't try to 'Hit' the
officers, then, at the same time, concede that he made a statement
that says the he (petitioner) did try to hit the officers. It is
also inconsistent to say that petitioner acknowledges a statement
to be accurate, that "I tried to hit the officers with the car",
in 'Opening Statements', then to put on a defense that says, "I
didn't try to hit the officers with the car", and, "I never had
the 'Intent' to do so. No reasonable attorney would make this a
'Trial Statagy' for they cancel out one another amounting to no
strategy at all, and thus, No Representation at all. Counsels act-
ions were unreasonable and fell far below professional standards,
and caused petitioner great harm and prejudice. Thus, violating
petitioner's right to effective assistance of counsel.


                    STATEMENT OF AUTHORITY


    First, Petitioner Incorporates petitioner's "Affidavit" (Exh-
hibit # 1), and (Exhibit #2- "Authorization for Release of Medical
Records) in support of petitioner's  Ineffectiveness of Counsel.
    The right to counsel guaranteed by the Constitution is the
right to the effective assistance of counsel. United States v.
Cronic, 466 U.S. 648, 104 S.Ct. 2039, at 2044 (1984); McMann v. Rich-
ardson, 397 U.S. 759, 90 S.Ct. 1441, at 1449 (1970); Gideon v. Wain-
wright, 372 U.S. 335, 83 S.Ct. 792 (1963). And, "[a]lthough we ought
not use the power of hindsight to second-guess the tactical

C27

decisions of counsel, neither ought we use that same power to construct theories of defense for a counsel whose lack of professional effort is clear from the pages of the record". SEE **Emerson v. Gramley**, 91 F.3d 898, at 909 (7th Cir. 1996)(Ripple, J., concurring in part, dissenting in part).

Counsel has "a duty to bring to bear such skill and knowledge as will render a trial a reliable adversarial testing process". Moreover, counsel has a duty to make reasonable investigation unnecessary. **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 2066 (1984); See Also: **Patrosso v. Nelson**, 121 F. 3d 297 (7th Cir. 1997); **Hall v Washington**, 106 F3d 742, 749 (7th Cir. 1997).

Petitioner is entitled to an evidentiary hearing in this matter to further develope the claims of Ineffective Assistance of Counsel, and thereafter be granted a New Trial.

## CLAIM-II

21. PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHERE THE PROSECUTOR TOLD THE COURT THAT PETITIONER WAS A MEMBER OF A 'STREET GANG' WHEN SUCH EVIDENCE WAS NOT CONNECTED TO CRIME CHARGED, AND WAS NOT AVAILABLE TO PROSECUTION IN THE DISCOVERY, THEREBY VIOLATING THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ILLINOIS CONSTITUTION OF 1970.

Here, the Prosecutor told the Court, while reading the so-called statement into evidence that "Pedro states that he is a member of the 'Ambrose Strret Gang'. Although, the Court asked the Posecutor, "What purpose that serve"? This was very prejudicial to petitioner. Counsel for petitioner failed to object to these improper arguments, compounded by the fact that petitioner never stated this to anyone, nor did he adopt this so-called statement that his attorney agreed to have it entered into evidence. The Judge was the trier of fact, and although, the Judge is familiar with the law concerning evidence of gang membership, it is widely accepted that this king of evidence is 'Highly Prejudicial' and thus should not have been mentioned. Counsel for petitioner knew that this evidence of gang membership was in this So-Called Voluntary 'Unsigned' Statement, should have known the prejudicial affect

C28

of such evidence, and the prosecutor, knowing that such evidence
was 'Highly Prejudicial' typed this statement into this so-called
voluntary statement given by petitioner. Petitioner never told
anyone from thr police department, nor the State's Attorney's
office that he was a member of the ambrose steet gang. This was
orchestrated by the prosecution to inflame the Judges passion,
and thus, was reverseable error. This evidence was not relative
to this crime, was in no way connected to it, and was false.

   therefore an evidentiary hearing must be held to determine
the prejudice that petitioner suffered from the prosecution's
introduction of said evidence, and counsel's failure to object to
it and move the court for a mistrial.

## STATEMENT OF AUTHORITY

   Evidence of gang activity may be admitted so long as it is
relevant to an issue in dispute and its probative value is not
substantially outweighed by its prejudicial effect. People v.
Villarreal, 198 Ill.2d 209, 232, 260 Ill.Dec. 619, 761 N.E.2d 1175
(2001); People v. Gonzalez, 142 Ill.2d 481, 489-90, 154 Ill.Dec.
864 (1991). Evidence of gang membership is admissable only when
or there is sufficient proof that membership is related to the
crime charged. People v. Smith, 141 Ill.2d 40, 58, 152 Ill.Dec. 218,
565 N.E.2d 900 (1990). Evidence of gang affiliation is relevant
if it tends to make the existence of any fact that is of cosequence
to the determination of the action more probable or less probable
than it would be without the evidence. Id. Villarreal, 198 Ill.2d
at 232-33.

   Therefore petitioner must be given an evidentiary hearing in
order to determine the prejudicial effect that this evidence had
in petitioner's trial

<u>CLAIM-III</u>

PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON
DIRECT APPEAL BY HIS APPELLATE ATTORNEY'S FAILURE TO RAISE
THESE ISSUES IN THE DIRECT APPEAL, THUS DEPRIVING PETITIONER
OF HIS CONSTITUTIONAL RIGHTS AS PROVIDED BY THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
AND ARTICLE 1, § 8, OF THE ILLINOIS CONSTITUTION OF 1970.

Appellate counsel on direct review was ineffective for not
raising cognizable claims of constitutional magnatude that was
evidenced in the record and other errors that deprived petitioner
of a fair trial, including, but not limited to, Appellate counsel's
failure to raise issue of Prosecutorial Misconduct, Ineffective
Assistance of Trial Counsel.

Here, the petitioner suffered prejudice by Appellate counsel's
failure to raise the various issues, however, these issues have
not been waived or defaulted, and are all effectively reviewable
by this Court.

## STATEMENT OF AUTHORITY

The failure of appellate counsel to recognize Constitutional
deficiencies and bring themto the attention of the State reviewing
Court is inconsistent with effective appellate representation.
<u>Evitts v. Lucey</u>, 469 U.S. 387, 105 S.Ct. 830 (1985). Where appellate
counsel's performance is objectively unreasonble and deficient, the
failure to raise issue on appeal will constitute "Cause and Preju-
dice". See: <u>Freeman v Lane</u>, 962 f.2d 1252 (7th Cir. 1991).

## CONCLUSION

That base on the aforementioned Constitutional deprivations
as enumerated in Claims I thru Claim III, that petitioner must be
granted an Evidentiary Hearing and thereafter a New Trial Ordered
in these proceedings.

Respectfully Submitted

SUBSRIBED AND SWORN TO BEFORE ME
THIS 6th DAY OF APRIL, 2004

_Pedro Alamillo #B50088_

Pedro Alamillo #B50088
P.O. Box 711
Menard, IL. 62259

"OFFICIAL SEAL"
Regina Summers
Notary Public, State of Illinois

-12-

RECEIVED

2004 APR -9 AM 9: 12

# A F F I D A V I T

Under penalties as provided by Law pursuant to § 1-109 of the Code Of Civil Procedure, the under signed certifies that the statements setforth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to true.

April 5th, 2004                              _Pedro Alamillo_ #B.50088

Pedro Alamillo # B50088
Menard C. C.
P.O. Box 711
Menard, Illinois 62259

RECEIVED
2004 APR -9  AM 9: 14
CLERK

# A P P E N D I X

## TABLE OF CONTENTS

Exhibit# !.............................4-page Affidavit Pedro Alamillo

Exhibit # 2....................Authoration for release of Medical Records

Report of Proceedings July 9, 2001, A1,A8,A76,A77,A78,A79,A80,A81.

Report of Proceedings, C1,C8,C24,C26,C27.C28.

C32

## AFFIDAVIT OF PEDRO ALAMILLO

I, Pedro Allamillo, Petitioner, being first duly sworn upon my oath depose and state that the following matters are both true and correct, made upon personal knowledge and belief, and if called upon as a witness, I am competent to testify thereto, and because of my allegations of a violation of my SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL against my Trial Attorney, it is self-apparent that I am unable to obtain any Affidavits from the afore-mentioned person to support my claim, however, I have attatched to my Post Conviction Petition for Relief, exerpts from the Record of Proceedings, and am at this time still waiting for the above-mentioned Attorney to turn over Discovery Materials that are neeeded, that are 'Outside' of the record, to further support this claim, as well as, other potential claims of Ineffectiveness.

After several request by myself and family members, this Attorney has yet to turn over requested documents. Thus, petitioner's Claims can not be fully and properly presented to this Honorable Court due to time requirements for filing said petition. However, an appointment of counsel by this Court would give petitioner a reasonable oppurtunity to obtain needed information to Amend my petition, and fully support and prove my claims to be true. Therefore I state as follows:

After retaining Mr. David Wiener to represent me in People v. Alamillo, Mr. Wiener and I, during our first conference discussed that facts and events leading up to my arrest, and the 'Charges' against me, while I was held in the Cook County Jail. During this conference I mentioned the possibility of a defense of " Intoxication", 'Under the Influence of Drugs' to him. At that time, he (Mr. Wiener), stated that he needed to review the video tape of the pursuit that the prosecution had, and then he would let me know what he thought. I then asked Mr. Wiener, "What Tape"? He then advised me that the State Attorney had an Arial Video Tape Record-

-1- C33                    EXHIBIT #1 4pages

ing of the pursuit captured by helicopter. Mr. Wiener took notes
during this conference, in which, I gave him a full account of
what took place prior to, and during the pursuit, my arrest, and
what happened at the hospital after my surgery. I began by tell-
ing him about my being kicked-out of the Haymarket Treatment pro-
gram on the morning of October 9, 2000, of when I took off in the
vehicle that was running as I passed by, and how I ended up in
downtown Chicago, how I was shot by police officers, my arrest,
and also, that after surgery at Northwestern Memorial Hospital
where bullets had been removed from my abdomen, that while I was
in recovery and asleep, I was awakened by two officers. These
officers asked me if I wanted to answer some questions, and that,
I told them 'No', and even after telling them No repeatedly, that
I even asked a nurse who had entered the room to give me medica-
tion to ask these guys to leave because I was in pain and didn't
want to answer any questions, but that the nurse left the room
without asking the officers to leave. The officers continued try-
ing to get me to answer their questions, then I told the officers
that I wanted to speak to a lawyer, but even after this they still
tried to get me to answer questions , but I would not cooperate,
and finally they left.

       I next spoke with Mr. Wiener by phone, at which time, he ad-
vised me that he had viewed the video tape of the pursuit, and
that he was coming to see me at the jail. When, at the next con-
ference, Mr. Wiener came to the jail. He said to me that raising
the issue of 'Under the Influence' was out of the question, because,
in his words, "I looked at the video, and to me, you looked like a 'Fucking
Professional Car Driver', and they started recording the pursuit
when you got onto the Eisenhower Exspessway". Mr. Wiener then sta-
ted that his main concern was the issue surrounding the cops. We
had talked about this prior to him viewing the video tape. However,
Mr. Wiener, again asked me if I saw any uniformed cops, and said,
because he had everything else beat, then went on to ask if I saw
the cops and did I try to hit them with the vehicle, I told him,
"No, I did not", and that I didin't see any police officers. He
then asked, when did I notice that I was shot. I told him that as

-2-

C34

soon as I began turning onto Financial Plaza, I then noticed that
I had been shot, at the time the driver's window shattered.
Mr. Wiener then asked me again if I saw any cops in uniform , and
again I told him 'No'. He then stated that he would get the Disc-
overy and see what the State had. I next saw Mr. Wiener in Court,
he advised me that he had the Discovery and he'd be out to see
me at the Jail. During that conference, at one point, I mentioned
the tape, after Mr. Wiener said that the reports say that I tried
to hit the officers with the car, I asked about the tape because
it should show, if in fact, I tried to hit the officer with the
vehicle, but here, Mr. Wiener became angry and said, "Look, let me
handle this, let me do my job"! I never mentioned the tape again.

    Furthermore, I never saw the video, and too, my attorney did
not offer it into evidence to support the fact that I never tried
to hit any officers. After this part of the conversation ended, he
then went back to what the police reports said about them obtain-
ing a statement from me that wasn't signed, and that according to
the officers account, I stopped in traffic and they approached the
vehicle with their weapons drawn, and at that point, is when I
tried to run them over. Mr.Wiener then stated, "What I want you to
say if we go to trial is that when you pulled up to the light and
stopped in traffic, and there were two cars in front of you, that
one of the cars pulled off to the left, and the other pulled off
to the right, and that you proceeded to go between the two cars,
this is when you noticed two police officers in front of the car
that had pulled off to the left, and that's when they shot you".

    Thus, this is what Mr. Wiener told me to say, which is **NOT**
a true and correct account of what really happened. The true and
correct account of what happened is what I explained above, while
telling him what happened. I asked Mr. Wiener if he was sure that
this is what he wanted me to say? He responded by saying, "If you
want to beat this, then you have to listen to what I say", "I'm
going to beat the most serious charges, but not the Possession of
a Stolen Motor Vehicle because they got a tape of them pulling
you from that car". Finally, we talked about the oral statement,
he asked me, "Did you make this statement"? I told him as I had
each time before, I did not make any statements. He then asked,

-3-
C35

if I remember talking to the police that day. I told him that I
remember two guys waking me up out of my sleep, I had just gotten
out of surgery, I was in excruciating pain and not feeling well,
that they asked me if I wanted to answer some questions, and I
told them, No, I'm not feeling well, but they continued trying to
ask me questions anyway, and at the sametime, a nurse entered
the room to give me some medication, that I asked her to please
tell them to leave because I didn't feel good, but the nurse
left the room without saying anything, I again told them I didn't
want to talk to them and said that I wanted to see my lawyer, and
after a while they left.  Mr. Wiener then said, "Well, what we
are going to say is, that, you really don't remember the questions
they were asking, but you do remember them entering the room".

I reminded Mr. Wiener that I never made no statement, that I
never signed any statement, that I asked the nurse to have them
to leave, then, Mr. Wiener became angry and stated, "Listen to me,
if you want to beat this".


WHEREFORE, I, Pedro Alamillo, affiant states that I advised
my Attorney Mr. David Wiener of the above-mentioned facts, and
that he was made fully aware of the facts setforth in this doc-
ument, and furthermore that the above- mentioned responses to
the facts as explained to him are true. Affiant states further
naught.


Respectfully Submitted,

*Pedro Alamillo* (#B.50088)

PEDRO ALAMILLO #B50088
Menard C. C.
P. O. Box 711
Menard, Illinois 62259

SUBSCRIBED AND SWORN TO BEFORE ME
THIS     DAY OF APRIL, 2004.


_____
        NOTARY PUBLIC

∩36

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

```
ENTERED
TIME_____ AM
            PM
JUL 03 2004
Judge Vincent Gaughan
Dorothy Brown
Clerk of the Circuit Court
Criminal Division
Deputy Clerk Signature
```

|  |  |  |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Post-Conviction |
| | ) | |
| | ) | No.    00 CR 24606-01 |
| PEDRO ALAMILLO | ) | |
| Defendant-Petitioner. | ) | |
| | ) | |

### ORDER

On APRIL 12, 2004, **PEDRO ALAMILLO**, (hereinafter, "Petitioner" or "Defendant") pursuant to the Illinois Post Conviction Hearing Act, 725 ILCS 5/122-1 *et. seq.* (West 2002) filed a petition seeking post-conviction relief. As grounds for relief, Petitioner asserts that he was denied effective assistance of both trial and appellate counsel and that he was denied the right to a fair trial where the State attempted to introduce improper prejudicial evidence. For the reasons that follow, Petitioner's request for relief is **DENIED** and his petition is dismissed as frivolous and patently without merit.

### II.    BACKGROUND

On November 6, 2000, PEDRO ALAMILLO was charged by way of grand jury indictment with four counts of attempted first-degree murder, aggravated kidnapping, aggravated possession of a stolen motor vehicle and possession of a stolen motor vehicle. On July 9, 2001, Defendant signed a jury waiver form and proceeded on the charges pending against him by way of bench trial. On August 13, 2001, at the close of the evidence, Defendant was found guilty of attempted first-degree murder and aggravated possession of a stolen motor vehicle. On October 5, 2001, Defendant was sentenced to 22-years imprisonment on the attempted first-degree murder and 6-years on the aggravated possession of a stolen motor vehicle; the sentences were ordered to run concurrently. On that same date, Defendant filed notice of appeal with the First District Appellate Court. In an unpublished order, pursuant to Supreme Court Rule 23, the Appellate Court affirmed Defendant's conviction and sentence. *People v. Alamillo*, No. 01-4021 (March 31, 2003).

### III.    ANALYSIS

The instant proceeding commenced on April 12, 2004, and is now before this court for initial determination of the legal sufficiency of the petition pursuant to Section 122-2.1 of the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et. seq.* (West 2003); See also *People v. Erickson*, 183 Ill. 2d 213, 222, 700 N.E.2d 1027, 1031-32 (1998). At this stage, the court is simply to determine, within 90-days of its filing and without input from the State, whether the petition is frivolous or patently without merit. *People v. Coleman*, 183 Ill 2d 366, 379, 701 N.E.2d 1063 (1998).

EXHIBIT D                    -∧ 52

If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2002). A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the "gist of a constitutional claim." *People v. Gaultney*, 174 Ill. 2d 410, 418, 221 Ill. Dec. 195, 675 N.E. 2d 102 (1996). The "gist" standard is "a low threshold." *Gaultney*, 174 Ill. 2d at 418. To set forth the "gist" of a constitutional claim, the post-conviction petition "need only present a limited amount of detail" (*Gaultney*, 174 Ill. 2d at 418) and hence need not set forth the claim in its entirety.

The Illinois Post-Conviction Hearing Act (hereinafter, the Act) provides a mechanism by which criminal defendants can assert that their convictions and sentences were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. See 725 ILCS 5/122-1 (West 2003). An action for post-conviction relief is a collateral proceeding and is not an appeal from the underlying judgment. *People v. Mahaffey*, 194 Ill. 2d 154, 170, 252 Ill. Dec. 1, 742 N.E.2d 251 (2000); *People v. Morgan*, 187 Ill. 2d 500, 528, 241 Ill. Dec. 552, 719 N.E.2d 681 (1999). In order to be entitled to post-conviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the judgment being challenged. *Morgan*, 187 Ill. 2d at 528; *People v. Tenner*, 175 Ill. 2d 372, 378, 222 Ill. Dec. 325, 677 N.E.2d 859 (1997).

The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal. *People v. Haynes*, 192 Ill. 2d 437, 464, 249 Ill. Dec. 779, 737 N.E.2d 169 (2000); *People v. Towns*, 182 Ill. 2d 491, 502, 231 Ill. Dec. 557, 696 N.E.2d 1128 (1998). Issues that were raised and decided on direct appeal are barred by the doctrine of *res judicata*. *Towns*, 182 Ill. 2d at 502; *People v. Whitehead*, 169 Ill. 2d 355, 371, 215 Ill. Dec. 164, 662 N.E.2d 1304 (1996), *overruled on other grounds*, *People v. Coleman*, 183 Ill. 2d 366, 233 Ill. Dec. 789, 701 N.E.2d 1063 (1998). Issues that could have been presented on direct appeal, but were not, are waived. *Haynes*, 192 Ill. 2d at 465; *Towns*, 182 Ill. 2d at 503. However, the doctrines of *res judicata* and waiver are relaxed in three situations: where fundamental fairness so requires, where the alleged waiver stems from the incompetence of appellate counsel, or where the facts relating to the claim do not appear on the face of the original appellate record. *Mahaffey*, 194 Ill. 2d at 171; *Whitehead*, 169 Ill. 2d at 371-72.

A defendant filing a post-conviction petition is not entitled to an evidentiary hearing as a matter of right. *Mahaffey*, 194 Ill. 2d at 171; *Whitehead*, 169 Ill. 2d at 370-71. An evidentiary hearing on post-conviction claims is warranted only where the allegations of the post-conviction petition, supported where appropriate by the trial record or accompanying affidavits, make a substantial showing that the defendant's constitutional rights have been violated. *Haynes*, 192 Ill. 2d at 465; *Towns*, 182 Ill. 2d at 503. In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any

2



accompanying affidavits are taken as true. *People v. Brisbon*, 164 Ill. 2d 236, 244-45, 207 Ill. Dec. 442, 647 N.E.2d 935 (1995); *Towns*, 182 Ill. 2d at 503.

**A.    Substantive Claims**

### 1.    *Ineffective assistance of counsel*

Petitioner states that he received ineffective assistance of both trial and appellate counsel. Specifically, Petitioner states that trial counsel (1) failed to subject the State's case to a meaningful adversarial test and failed to file a motion to suppress statements, (2) failed to investigate and interview doctors and nurses who treated him at the hospital, (3) acknowledged Defendant's statement to be accurate during opening statements then argued that the State could not prove the element of intent, and (4) stipulated to his statement being entered into evidence.

In order to succeed on a claim of ineffective assistance of trial counsel, a defendant must satisfy the two-pronged *Strickland* test: a defendant must allege facts which demonstrate that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); *People v. Wilson*, 191 Ill. 2d 363, 370, 247 Ill. Dec. 443, 732 N.E.2d 498 (2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Evans*, 186 Ill. 2d 83, 93, 237 Ill. Dec. 118, 708 N.E.2d 1158 (1999). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. The failure to satisfy either the deficiency prong or the prejudice prong of the Strickland test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *Wilson*, 191 Ill. 2d at 370.

Petitioner first claims that counsel failed to subject the State's case to a meaningful adversarial test. In *United States v. Cronic*, 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984), the court explained that there are some circumstances so likely to harm the defense that prejudice need not be shown under the *Strickland* test of ineffective assistance of counsel, but will be presumed. In *Cronic*, the court emphasized that the sixth amendment requires, at a bare minimum, that defense counsel act as a true advocate for the accused. Where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *People v. Hattery*, 109 Ill. 2d 449, 460-61, 488 N.E.2d 513 (1985).

3



The court in *People v. Johnson*, 128 Ill. 2d 253, 131 Ill. Dec. 562, 538 N.E.2d 1118 (1989),

explained when it is appropriate to use the *per se* ineffectiveness of counsel rule set forth in *Hattery* and

when it is appropriate to require that a defendant show prejudice under the *Strickland* test: "though

*Hattery* condemned the practice [of conceding guilt after a not-guilty plea was entered], the court in that

case did not hold that it is *per se* ineffectiveness whenever the defense attorney concedes his client's guilt

to offenses in which there is overwhelming evidence of that guilt but fails to show on the record consent

by defendant. This would be especially true when counsel presents a strong defense to the other charges.

The rule in *Hattery* must be narrowly construed. Thus, if a concession of guilt is made, ineffectiveness

may be established; however, the defendant faces a high burden before he can forsake the two-part

*Strickland* test." *Johnson*, 128 Ill. 2d at 269-70.

Trial counsel's actions in the present case stand in sharp contrast to the actions of defense counsel

in *Hattery* and do not support a finding of *per se* ineffectiveness of counsel. Trial counsel presented

opening statements; cross-examined all of the State's witnesses; objected to certain testimony; and argued

successfully that certain evidence should be excluded. Accordingly, Defendant's claim of *per se*

ineffective assistance of counsel is rejected.

Defendant argues that counsel was ineffective because he failed to file a motion to suppress

statements. The general rule is that trial counsel's failure to file a motion does not establish incompetent

representation, especially when that motion would be futile. *People v. Pecoraro*, 144 Ill. 2d 1, 13, 161 Ill.

Dec. 296, 578 N.E.2d 942 (1991). Whether or not to file a motion is a matter of trial strategy, which will

be accorded great deference. *People v. Bryant*, 128 Ill. 2d 448, 459, 132 Ill. Dec. 415, 539 N.E.2d 1221

(1989). Defense counsel's failure to file a motion to suppress defendant's statement did not result in

ineffective assistance of counsel.

The Defendant's statement did not constitute all of the State's evidence against him. The State's

case presented seven credible witnesses. It cannot be said that the result of the trial would have been

different had the statements been suppressed.

Petitioner next claims that counsel failed to interview doctors and nurses who treated him in the

hospital. Specifically, Petitioner alleges counsel should have interviewed the doctor that performed the

surgery to ascertain what medication had been given prior to surgery and during recovery, and the effect

such medications have on ones judgment. Reviewing the transcript reveals that the State called Leslie

Emert, a registered nurse who was Defendant's primary nurse at Northwestern Memorial Hospital after

surgery. On direct examination, Ms. Emert explained that as Defendant's primary nurse, she was solely

responsible for administering medications to Defendant. Ms. Emert further testified that on October 9,

2000, she did not administer any medications, for pain or otherwise. Accordingly, counsel did not render

ineffective assistance for failing to interview doctors or nurses who treated Defendant to ascertain the

4



effect medications have on one's judgment because the evidence showed that Defendant was not on any medication that would have altered his judgment.

Petitioner also argues, that counsel rendered ineffective assistance when he acknowledged by way of stipulation, that Defendant's statement was accurate, yet argued that the State could not prove the element of intent. Counsel, by making this stipulation, did not render ineffective assistance. Stipulating to this evidence was not an admission of Defendant's guilt. Rather, this stipulation like all stipulations, are made for judicial efficiency. Had counsel not stipulated to this evidence, the State would have merely sought to introduce it some other way. Considering that the State presented the testimony of seven witnesses, it can hardly be said that even without the statement the result of the proceeding would have been different. Furthermore, counsel attempted to prove Petitioner lacked the intent for attempted murder of the police officer when questioning Petitioner, "Were you trying to hit the officers?" To this question, Petitioner responded, "No, I wasn't." This line of questioning was clearly counsel's attempt to show, albeit unsuccessfully, that Petitioner lacked intent to commit attempt murder.

## 2.   *Ineffective assistance of appellate counsel*

Petitioner claims he received ineffective assistance of appellate counsel. Claims of ineffective assistance of appellate counsel are also evaluated under the *Strickland* test. *People v. Childress*, 191 Ill. 2d 168, 175, 246 Ill. Dec. 352, 730 N.E.2d 32 (2000). A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and that counsel's decision prejudiced defendant. If the underlying issue is not meritorious, then defendant has suffered no prejudice. *Childress*, 191 Ill. 2d at 175.

As explained *supra*, Petitioner's underlying claims are without merit; as such, appellate counsel's failure to raise these issues on direct appeal has not subjected Petitioner to prejudice. Accordingly, Petitioner's claim of ineffective assistance of appellate counsel is without merit.

## 3.   *Improper prejudicial evidence*

Lastly, Petitioner claims that he was denied his constitutional right to a fair trial where the State, while reading Defendant's statement into the record, stated that Defendant is a member of the Ambrose Street Gang. Defendant is incorrect in his belief that he was denied his right to a fair trial because upon the State's reading of the statement, the following colloquy occurred:

| | |
|---|---|
| THE COURT: | "I know this is a bench. What purpose does that have in this trial? |
| STATE: | Judge I'm trying to get through this. I ask to strike that. |
| THE COURT: | That will be stricken." |

C56

Accordingly, that portion of the statement that was stricken was not considered by the court in rendering its decision as to Defendant's fate.

### IV.   CONCLUSION

Based on the foregoing discussion the court finds that the matters raised by Petitioner are frivolous and patently without merit.  Accordingly, the petition for post-conviction relief shall be and is hereby dismissed.  Petitioner's motion for the appointment of counsel and to proceed in *forma pauperis* is likewise denied.

**ENTERED:**

**Hon. Vincent M. Gaughan (mck-6/04)**
**Circuit Court of Cook County**
**Criminal Division**

**DATE:** _____

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-04-2456

### IN THE
### APPELLATE COURT OF ILLINOIS
### FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 26406 |
| | ) | |
| PEDRO ALAMILLO, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

### O R D E R

Following a bench trial, defendant, Pedro Alamillo, was
convicted of attempted first degree murder (720 ILCS 5/8-4(a)
(West 2000); 720 ILCS 5/9-1(a)(1)) and aggravated possession of a
stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2000)),
and sentenced to concurrent terms of 22 years' and 6 years'
imprisonment, respectively.  After unsuccessfully appealing his
conviction and sentence for attempted first degree murder (see
People v. Alamillo, No. 1-01-4021 (2003) (unpublished order under
Supreme Court Rule 23)), defendant filed a pro se postconviction
petition.  The trial court summarily dismissed the petition as
frivolous and patently without merit.  Defendant contends on
appeal that the trial court erred in summarily dismissing his
petition because:  (1) the court failed to review the petition
within the requisite 90-day period; and (2) his petition stated

EXHIBIT E

1-04-2456

the gist of a constitutional claim of ineffective assistance of
counsel.  We affirm.

The facts of this case are fully set forth in our initial
order disposing of defendant's direct appeal.  Here, we summarize
only those facts necessary to resolve the claims raised in this
appeal.  On October 9, 2000, defendant stole a parked car with a
child inside, and a police chase ensued.  At trial, numerous
eyewitnesses testified that, as defendant was stopped in traffic,
Chicago police officer Eric Frenzel and other officers exited
their cars and approached defendant's car on foot.  When traffic
cleared, defendant accelerated and swerved the car in the
direction of the police officers.  Officer Frenzel was in front
of defendant's vehicle and fired his weapon, hitting defendant in
the abdomen.  Defendant was arrested after crashing the car into
a building several blocks away.  Defendant subsequently underwent
surgery to remove the bullet.

At trial, defendant testified that he did not remember being
questioned by detectives after surgery because he was in pain and
had taken morphine, vicodin and zofran.[1]  However, the parties
stipulated that defendant made a statement to detectives while in
the hospital.  Although defense counsel refused to stipulate that
defendant was not under the influence of any drugs because he was

---

[1]Defendant's medical records from the incident in question
are included in the record on appeal.

- 2 -

1-04-2456

in the hospital, he agreed to stipulate that, at the time the
statement was made, defendant was not under the influence of
"self-induced" drugs.  Defendant's statement, in summary, was
that he drove toward the police officer in front of his car in an
attempt to hit him.  Defendant did not sign the statement after
it was written.  In rebuttal, Leslie Emert, defendant's nurse at
the hospital, testified that she had not given defendant any
medication, and that he was alert when she spoke with him.

The trial court found defendant guilty of attempted first
degree murder of Officer Frenzel and aggravated possession of a
stolen motor vehicle, and sentenced him as previously described
in this order.  On direct appeal, defendant contended that his
attempted first degree murder conviction of Officer Frenzel was
inconsistent with his acquittal of attempted first degree murder
of another police officer, and that his sentence was erroneously
enhanced.  We affirmed the judgment of the trial court.
Alamillo, No. 1-01-4021, order at 11.  Thereafter, the supreme
court denied defendant's petition for leave to appeal.  People v.
Alamillo, 205 Ill. 2d 591 (2003).

On April 6, 2004, defendant mailed a notarized *pro se*
postconviction petition alleging ineffective assistance of trial
and appellate counsel.  Specifically, defendant alleged that his
trial counsel was ineffective for:  (1) failing to subject the
State's case to meaningful adversarial testing and failing to

- 3 -

1-04-2456

file a motion to suppress his statement; (2) failing to

investigate and interview his treating doctors and nurses; (3)

asserting inconsistent arguments by stating, during opening

argument, that defendant's statement was accurate, then arguing

that the State could not prove intent; and (4) stipulating to

defendant's statement.  Defendant alleged that his appellate

counsel was ineffective for failing to raise those claims on

direct appeal.  The petition was file-stamped by the clerk on

April 9, 2004.  On July 8, 2004, in a written order, the trial

court dismissed the postconviction petition, specifically finding

defendant's claims frivolous and patently without merit.  This

timely appeal followed.

The question of whether a summary dismissal of a

postconviction petition was in error is reviewed *de novo*.  People

v. Coleman, 183 Ill. 2d 366, 388-89 (1998).

The Post-Conviction Hearing Act ("Act") provides a three-

stage process for a defendant to challenge constitutional

violations resulting in his conviction.  See 725 ILCS 5/122 *et*

*seq.* (West 2004); see also Coleman, 183 Ill. 2d at 378-79.  In

the first stage, the trial court has 90 days from the date the

petition is filed and docketed to review it, and determine

whether it is frivolous or patently without merit.  See 725 ILCS

5/122-2.1(a)(2) (West 2004); see also People v. Porter, 122 Ill.

2d 64, 86 (1988) (finding that the review period is mandatory,

1-04-2456

thus failure to meet the requirements renders summary dismissal of the petition void).[2]  If the trial court finds that the petition meets this threshold standard, or if the court fails to review the petition within 90 days, the petition proceeds to the second stage.  See 725 ILCS 5/122-2.1(b) (West 2004).

Defendant first contends that his *pro se* postconviction petition must be remanded for further proceedings because the trial court failed to comply with the 90-day statutory summary dismissal requirement (see 725 ILCS 5/122-2.1(a)(2) (West 2004)), where the trial court dismissed his petition 93 days after it was mailed.  The State responds that the trial court's dismissal was proper because its ruling was made 87 days after the petition was filed and docketed.

According to the State, this issue of when the requisite period of review commences is currently pending before the supreme court in People v. Brooks, No. 1-03-0586 (2004) (unpublished order under Supreme Court Rule 23), *appeal allowed* No. 99293.[3]  Unless, or until, the supreme court directs otherwise, we will follow the well-settled law that the requisite 90-day time period does not begin when the petition is mailed, but when it is filed and docketed.  See 725 ILCS 5/122-2.1(a)

---

[2]We note that at the time Porter was decided the requisite period was 30 days.

[3]Oral argument was scheduled for January 10, 2006.

1-04-2456

(West 2004); see also <u>People v. Johnson</u>, 232 Ill. App. 3d 882,
884 (1992) (finding that the trial court's requisite review
period "does not begin until the petition is actually on file
with the court"); <u>People v. Mitchell</u>, 221 Ill. App. 3d 979, 982
(1991) (finding that the date of filing is the date on which the
clerk file-stamps the petition and not the date the petition was
forwarded); <u>People v. Floyd</u>, 210 Ill. App. 3d 840, 843 (1991)
(finding that the "petition is not deemed to have been filed
until it passes into the actual physical possession of the
clerk," and that the "date of mailing is not controlling").  We
also note that this court determined that filing and docketing
are merely "ministerial acts performed by the clerk," and the
date of importance in computing the 90-day review period is the
filing date.  See <u>People v. Byers</u>, 196 Ill. App. 3d 502, 509
(1990); see also <u>People v. Tarnow</u>, 249 Ill. App. 3d 797, 801
(1993).

In the instant case, defendant's petition was filed on April
9, 2004, and the trial court summarily dismissed it on July 8,
2004.  As a result, the trial court reviewed and summarily
dismissed the petition within 90 days of the filing date.

Defendant next contends that the trial court erred in
dismissing his petition because he stated a constitutional claim
of ineffective assistance of trial counsel.  Specifically,
defendant alleged that his trial counsel was ineffective for

- 6 -

1-04-2456

failing to investigate evidence; failing to file a motion to
suppress his alleged inculpatory statement; and stipulating to
his alleged inculpatory statement without waiver of his
confrontation rights.  The State responds that the trial court
properly dismissed defendant's petition as frivolous and patently
without merit because defendant failed to state the gist of a
constitutional claim.

In order to survive the first-stage of postconviction
proceedings, a defendant must allege a constitutional violation
necessitating relief under the Act.  People v. Smith, 326 Ill.
App. 3d 831, 839 (2001).  The defendant is merely required to
state the gist of a constitutional claim, which is a low
threshold demanding minimal detail.  People v. Jones, 341 Ill.
App. 3d 103, 106 (2003), citing People v. Edwards, 197 Ill. 2d
239, 244 (2001).  However, the defendant must provide affidavits,
records or other evidence to support the allegations.  See 725
ILCS 5/122-2 (West 2004).  "Unless positively rebutted by the
record, all well-pled facts are taken as true."  Smith, 326 Ill.
App. 3d at 839.  Allegations that are positively rebutted by the
record, however, aid in the determination of whether the
defendant's petition is frivolous or patently without merit.
Smith, 326 Ill. App. 3d at 840.

To successfully allege ineffective assistance of counsel,
the defendant must prove that his counsel's performance was both

- 7 -

1-04-2456

objectively deficient and prejudicial.  People v. Smith, 195 Ill.

2d 179, 187-88 (2000), citing Strickland v. Washington, 466 U.S.

668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

To establish deficient performance, the defendant must overcome

the strong presumption that his attorney's conduct was within the

wide range of reasonable professional assistance and constituted

trial strategy.  Smith, 326 Ill. App. 3d at 841.  Furthermore, to

establish prejudice, the defendant must demonstrate that

"counsel's deficient performance rendered the trial result

unreliable."  People v. Moore, 356 Ill. App. 3d 117, 121 (2005).

Defendant first contends that his petition sufficiently

alleged that his trial counsel was ineffective for failing to

investigate medical evidence pertaining to the involuntariness of

his alleged inculpatory statement.  Our supreme court has held

that failure to interview witnesses may demonstrate ineffective

assistance of counsel.  Coleman, 183 Ill. 2d at 398.  The value

of the missing evidence and the closeness of the evidence

presented determine whether counsel's failure to investigate is

ineffective assistance.  Smith, 326 Ill. App. 3d at 853.

Here, defendant presented medical records, including a

"Medical Administration Record" listing the drugs morphine,

vicodin and zofran, to support his petition.  The record,

however, indicates that defendant's nurse denied administering

pain killers to him on the day his alleged inculpatory statement

1-04-2456

was taken.  In addition, defendant cannot show that, but for his
attorney's failure to investigate this medical evidence, there is
a reasonable probability that he would not have been found guilty
(see People v. Smith, 341 Ill. App. 3d 530, 544 (2003)), in large
part due to the eyewitness testimony submitted at trial.  We find
that the record positively rebuts defendant's allegation of
ineffective assistance of counsel in relation to his failure to
investigate medical evidence.  Accordingly, this allegation was
insufficient to survive summary dismissal.

Next, defendant contends that his petition sufficiently
alleged that his trial counsel was ineffective for failing to
file a motion to suppress his alleged inculpatory statement.
Defendant must overcome the strong presumption that his
attorney's decision not to file a motion to suppress was
reasonable and constituted trial strategy.  See Smith, 326 Ill.
App. 3d at 841.  Where the motion would have been futile, trial
counsel's failure to file a motion to suppress will not establish
ineffective assistance.  People v. Patterson, No. 98641, slip op.
at 22 (December 15, 2005).  Therefore, the relevant question is
whether the trial court would have granted a motion to suppress
defendant's statement.  See Patterson, No. 98641, slip op. at 22.
We, however, note that at this stage of the postconviction
proceedings we are not to determine whether defendant's statement
was voluntary, but rather whether defendant's allegation is

1-04-2456

clearly rebutted by the record.  See <u>Smith</u>, 326 Ill. App. 3d at 844.

Again, the record rebuts defendant's allegation that he was under the influence of medication when he made his statement. Instead, the attending nurse testified that she did not give defendant any pain killers on the day his statement was given. Moreover, the evidence against defendant was overwhelming, with or without his inculpatory statement.  As a result, defendant cannot establish that, but for counsel's failure to file a motion to suppress, he would not have been convicted.  See <u>Patterson</u>, No. 98641, slip op. at 22 (finding that a defendant must show reasonable probability that the motion would have been granted and would have affected the trial's outcome).  Therefore, this allegation was insufficient to survive summary dismissal.

Finally, defendant contends that his petition sufficiently alleged that his trial counsel was ineffective for stipulating to defendant's inculpatory statement absent affirmative waiver of his right to confrontation.  In addition, defendant alleged in his petition that his appellate counsel was ineffective for failing to raise this issue on appeal.  Defendant's allegation lacks merit in light of <u>People v. Phillips</u>, No. 99568 (December 1, 2005), which held that

> "it is not necessary for either the court or
> counsel to admonish a defendant about the

- 10 -

1-04-2456

implications and consequences of a
stipulation, and defendant's explicit
agreement to the stipulation on the record is
not required where *** (1) defense counsel's
decision to stipulate appears to have been a
matter of trial tactics and strategy and
defendant does not object to counsel's
decision, and (2) the State's entire case is
not presented by stipulation, the defendant
*does* present or preserve a defense, and the
stipulation does not include a statement the
evidence is sufficient to convict." (Emphasis
in the original.)  <u>Phillips</u>, No. 99568, slip
op. at 14.

In the instant case, defendant did not object to the
stipulation at trial.  Defense counsel's agreement to stipulate
to defendant's statement appears to have been strategic, where he
instead pursued other methods to support his client's innocence.
In addition, because the stipulation was not tantamount to a
guilty plea where his counsel presented a defense and the
stipulation did not encompass the entire trial, we find that
defendant's sixth amendment right to confrontation was not
violated.  We, therefore, find that the record positively rebuts
defendant's allegation of ineffective assistance of counsel in

1-04-2456

relation to his stipulation regarding defendant's inculpatory statement.  As a result, we find that the trial court did not err in finding this allegation frivolous and patently without merit.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BURKE, J., with CAHILL, P.J., and McBRIDE, J., concurring.

No.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 04-2456 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 00 CR 26406. |
| | ) | |
| PEDRO ALAMILLO, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**PROOF OF SERVICE**

TO:  Lisa M. Madigan, Attorney General, 100 W. Randolph St., 12th Floor, Chicago, Illinois 60601;
Richard A. Devine, State's Attorney, 300 Daley Center, Chicago, Illinois 60602;
Mr. Pedro Alamillo, Register No. B-50088, Hill Correctional Center, P. O. Box 1700, Galesburg, IL 61401

You are hereby notified that on May 10, 2006, we sent via State of Illinois messenger service twenty copies of the Petition for Leave to Appeal in the above-entitled cause to the Clerk of the above Court and three copies to the Attorney General of Illinois. We have also personally delivered three copies to the State's Attorney of Cook County.

_____
BRETT C. ZEEB
Assistant Appellate Defender

STATE OF ILLINOIS  )
                   ) SS
COUNTY OF COOK     )

The undersigned, being first duly sworn on oath, deposes and says that he personally sent via messenger service the required number of copies of the attached Petition for Leave to Appeal to the Clerk of the above Court and to the Attorney General of Illinois and personally delivered copies to the State's Attorney of Cook County on May 10, 2006.

_____
CLERK

SUBSCRIBED AND SWORN TO BEFORE ME
on May 10, 2006.

_____
NOTARY PUBLIC

Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 05/21/08

EXHIBIT F

No.

IN THE

SUPREME COURT OF ILLINOIS

---

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) Petition for Leave to Appeal from the |
| | ) Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) No. 04-2456 |
| | ) |
| | ) There heard on Appeal from the Circuit |
| -vs- | ) Court of Cook County, Illinois, |
| | ) No. 00 CR 26406. |
| | ) |
| **PEDRO ALAMILLO,** | ) Honorable |
| | ) Vincent M. Gaughan, |
| Petitioner-Appellant. | ) Judge Presiding. |

---

## PETITION FOR LEAVE TO APPEAL

---

MICHAEL J. PELLETIER
Deputy Defender

BRETT C. ZEEB
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

No.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 04-2456 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 00 CR 26406. |
| | ) | |
| PEDRO ALAMILLO, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

**PRAYER FOR LEAVE TO APPEAL**

Pedro Alamillo, petitioner-appellant, hereby petitions this Court for leave to appeal,

pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, First

District, affirming his convictions for attempt first degree murder and aggravated possession of a

stolen motor vehicle and his concurrent prison sentences of 22 years and 6 years.

## PROCEEDINGS BELOW

The appellate court affirmed the lower court's summary dismissal of Pedro Alamillo's

*pro se* post-conviction petition on February 6, 2006. *People v. Alamillo*, No. 1-04-2456 (Rule 23

Order, February 6, 2006). Mr. Alamillo filed a petition for rehearing on February 27, 2006. The

Appellate Court denied the Petition for Rehearing on May 1, 2006. Mr. Alamillo filed an

affidavit of intent to file a petition for leave to appeal on May 5, 2005. A copy of the appellate

court's judgment, the order denying the rehearing petition, and Mr. Alamillo's affidavit of intent

are appended to this petition.

## COMPELLING REASON FOR GRANTING REVIEW

In *People v. Phillips*, 271 Ill.2d 270, 288, 840 N.E.2d 1194 (2005), this Court determined that "it is not necessary for either the [trial] court or counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where... (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant does present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict." In so ruling, this Court clarified and reaffirmed its holding in *People v. Campbell*, 208 Ill.2d 203, 221, 802 N.E.2d 1205 (2003), where this Court concluded that, absent any evidence on the record that the defendant disagreed with or objected to his counsel's decision to stipulate, because the stipulation was a matter of sound trial strategy, defense counsel could waive the defendant's right to confrontation, without running afoul of the confrontation clause.

In this case, Pedro Alamillo argued in a post-conviction petition that his counsel was ineffective for entering into a stipulation that admitted Alamillo made an inculpatory statement to police without Alamillo knowingly and intelligently waiving his constitutional right of confrontation. In his *pro se* petition, Alamillo noted that he made off-the-record allegations that he did not agree with his trial counsel's strategy regarding his alleged statement to police. Specifically, Alamillo contended that his trial counsel coerced him into testifying in a specific fashion during trial, despite Alamillo's statements to counsel that he did not make any statement to the police. (PC. 23-24, 35-36).

-3-

The appellate court affirmed the dismissal of Alamillo's post-conviction claim that his counsel was ineffective. (Order at 10-12). In reaching this conclusion, the court found this Court's holding in *Phillips* to be dispositive, reasoning that Alamillo did not object to the stipulation at trial and that "defense counsel's agreement to stipulate to defendant's statement appears to have been strategic." (Order at 11). The court found that "the record positively rebuts defendant's allegation of ineffective assistance of counsel in relation to his stipulation regarding [Alamillo's] inculpatory statement. (Order at 11-12).

*Phillips* and *Campbell*, however, involve direct appeals, and do not address the reach or proper application of their holdings in the context of post-conviction proceedings. As such, this Court should grant leave to appeal to provide guidance to lower courts regarding (1) whether a defendant's unrebutted allegation that he disagreed with and did not consent to his counsel's decision to stipulate to evidence states a viable confrontation claim in the context of a first-stage post-conviction petition; and (2) whether the requirement of an affirmative showing of an objection to a stipulation on the record applies with equal force to a post-conviction claim of confrontation error, where the defendant alleges he disagreed with his counsel's decision to stipulate.

## STATEMENT OF FACTS

After a bench trial, Pedro Alamillo was convicted of attempt first degree murder and aggravated possession of a stolen motor vehicle, (R. 150) and was sentenced to concurrent prison terms of 22 years and six years, respectively. (C. 70) On April 6, 2004, Alamillo mailed a post-conviction petition and argued that he was denied his Sixth Amendment right to the effective assistance of counsel, that he was denied his right to a fair trial, and that he was denied his right to the effective assistance of appellate counsel. (PC. 11-36)[1] On July 8, 2004, the trial court issued a written order dismissing Alamillo's petition as frivolous and patently without merit. (PC. 52-57) The appellate court affirmed the dismissal and denied Alamillo's petition for rehearing.

### Bench Trial

Alamillo testified that on the morning of October 9, 2000, he took a taxi to his fiancé's house at 1322 W. 18th Place after getting kicked out of the Haymarket Drug Treatment Center. (R. 102-03) Alamillo's fiancé was not home, so he walked to the bus stop to see if she was there, but she was not. (R. 104-05) Alamillo saw a parked car with its engine running. (R. 105) He did not see anyone in or near the car, so he got in and drove away. (R. 105-06) Sometime thereafter, an officer in a police car motioned for Alamillo to pull over, but he turned right and tried to get away. (R. 107) As Alamillo sped off, he heard whining and realized there was a child in the car. (R. 108) With several police cars in pursuit, Alamillo took the Eisenhower

---

[1]Regarding the appeal from the denial of Alamillo's post-conviction petition in Appeal No. 1-04-2456, ("PC") refers to the common law record and ("PC R") refers to the Report of Proceedings. Regarding Alamillo's direct appeal in Appeal No. 1-01-4021, ("C") refers to the common law record and ("R") refers to the Report of Proceedings.

Expressway toward downtown Chicago. (R. 108-09)

When Alamillo was stopped in traffic on Van Buren Street, an officer fired a shot through the driver's side window and hit Alamillo in the abdomen. (R. 110) Alamillo honked his horn at the two cars in front of him. (R. 111) One went to the right, and the other to the left, and Alamillo accelerated the car between the opening. (R. 111-12) While driving between the two cars, Alamillo saw officers with their guns drawn in front of the car that had pulled off to the left. (R. 112) Alamillo did not attempt to hit the officers with the car. (R. 113) The police arrested Alamillo after he crashed the car into a building at State Street and Grand Avenue. (R. 113-14)

Alamillo had surgery at Northwestern Memorial Hospital to remove the bullet from his abdomen. (R. 114) After the surgery, detectives came into his recovery room and asked him questions, but Alamillo did not remember the questions asked because he was in pain and his mind was distraught. (R. 115) The pain medication administered to Alamillo made him drowsy and affected his memory. (R. 116) Alamillo had no recollection of telling the detectives that he attempted to hit the officers with his car. (R. 115-16)

The State's evidence revealed that Officers Eric Frenzel, Brian Hansen, Garza and Ponce approached Alamillo on foot when Alamillo was stopped in traffic at Financial Place and Van Buren Street. (R. 43) According to Frenzel, he walked toward the front driver's side of the car with his gun drawn and ordered Alamillo to stop. (R. 44) When the traffic cleared ahead of Alamillo, he accelerated the car and swerved in the direction of Frenzel and Hansen. (R. 44, 57) Frenzel fired at the car and jumped out of its way as it brushed him. (R. 45) Hansen pointed his gun at Alamillo but did not fire because he did not have a clear shot. (R. 58) Hansen ran south out of the way of the car, which came within one foot of him. (R. 58, 61) Officer Bryant Hasellerig testified that Frenzel was the only officer directly in front of Alamillo's car. (R. 75)

-6-

The parties stipulated that Alamillo made a statement to detectives while in the hospital, but that he did not sign the written statement prepared by the detectives. (R. 79-80) The parties further stipulated that Alamillo was not under the influence of self-induced drugs when he made the statement. (R. 83)  According to the statement, which was read into evidence, Alamillo stated that he drove at the police officer in front of his car in an attempt to hit him. (R. 80-83)

In rebuttal, the State called Leslie Emert to testify. (R. 128)  Emert, a nurse who took care of Alamillo while he was in the hospital, testified that she did not give Alamillo any medication and that he was alert and aware when she spoke to him. (R. 131-33)  Detective Richard Chernikovich, one of the detectives who took Alamillo's statement, testified that Alamillo did not appear drowsy, did not receive any medication while he was present, and answered questions appropriately. (R. 141-43)

The trial court found Alamillo guilty of the attempt first-degree murder of Officer Frenzel, guilty of aggravated possession of a stolen motor vehicle, not guilty of the attempt first-degree murder of Officer Hansen, and not guilty of aggravated kidnapping. (R. 150)  The trial court sentenced Alamillo to concurrent prison terms of 22 years for the attempt first-degree murder and six years for the aggravated possession of a stolen motor vehicle. (R. 170)

### Direct Appeal

In his direct appeal, Alamillo argued the following: (1) that his conviction for the attempt first-degree murder of Officer Frenzel was inconsistent with his acquittal on the charge of the attempt first-degree murder of Officer Hansen; and (2) that the trial court erred in sentencing him to an enhanced sentence for the attempt murder of a peace officer because 720 ILCS 5/9-1(b)(1) (West 2000) refers to a "murdered individual," and Officer Frenzel was not killed. *People v. Alamillo*, No. 1-01-4021 (Rule 23 Order, March 31, 2003). The appellate court rejected both of

-7-

Alamillo's arguments and upheld the trial court's judgment. (Order at 11) (PC. 52)  Alamillo

filed a petition for leave to appeal, which the Illinois Supreme Court denied on October 7, 2003.

*People v. Alamillo*, 205 Ill. 2d 591, 803 N.E.2d 485 (2003).

### *Pro Se* Post-Conviction Petition

On April 6, 2004, Alamillo mailed his *pro se* post-conviction petition. (PC. 11-12)  The

clerk file-stamped the petition on April 9, 2004. (PC. 12)  Alamillo raised three arguments in his

petition. (PC. 23-36)  First, Alamillo argued that he was denied his Sixth Amendment right to

the effective assistance of trial counsel in the following four ways: (1) his counsel failed to

subject the State's case to a meaningful adversarial test and failed to file a motion to suppress his

statement to police (PC. 23-24); (2) counsel failed to investigate his claim that his statement to

police was involuntary due to the medication he received after surgery (PC. 25); (3) counsel

stated in his opening statement that Alamillo's statement to police − in which Alamillo

allegedly admitted to trying to hit the officer with the car − was correct, and then made the

inconsistent argument that the State failed to prove Alamillo had the intent to hit the officers with

the car (PC. 26); and (4) counsel stipulated to Alamillo's written statement to police being

entered into evidence and that Alamillo was not under the influence of any self-induced drugs at

the time of the statement. (PC. 27)  Alamillo appended to the petition a copy of the request to

Northwestern Memorial Hospital for his medical records. (PC. 37)[2]

According to the records from Northwestern Memorial Hospital, on October 9, 2000, at

2:00 p.m. − the day of Alamillo's surgery − Alamillo was administered morphine, vicodin and

_____

[2] Following the subsequent dismissal of Alamillo's post-conviction petition, the medical
records were obtained and forwarded to appellate counsel. The appellate court granted Alamillo's
motion to supplement the record on appeal with the medial records.

-8-

zofran. (Supp. R. 21)

Second, Alamillo argued he was denied a fair trial when the prosecutor told the court that he was a member of a street gang and such evidence was not relevant to the crime. (PC. 28-29) Finally, Alamillo argued he was denied his right to the effective assistance of appellate counsel based on his counsel's failure to raise the above two issues in his direct appeal. (PC. 30) Alamillo attached to his petition his four-page affidavit, which details his ineffective assistance of trial counsel claims. (PC. 33-36) In a July 8, 2004, written order, Judge Gaughan dismissed Alamillo's petition, finding his claims were frivolous and patently without merit. (C. 52-57)

### Appeal of Summary Dismissal of Post-Conviction Petition

On appeal, Alamillo argued that the trial court erred in summarily dismissing his petition because: (1) the court failed to review the petition within the requisite 90-day period; and (2) his petition stated the gist of a constitutional claim of ineffective assistance of counsel. In support of his ineffective assistance of counsel claim, Alamillo contended that his trial counsel coerced him into testifying in a specific fashion during trial, despite Alamillo's statements to counsel that he did not make any statement to the police. (PC. 23-24, 35-36). This Court affirmed the dismissal of the defendant's post-conviction claim that his counsel was ineffective. (Order at 10-12). In reaching this conclusion, this Court found *People v. Phillips*, 217 Ill.2d 270, 840 N.E.2d 1194 (2005) to be dispositive, reasoning that Alamillo did not object to the stipulation at trial and that "defense counsel's agreement to stipulate to defendant's statement appears to have been strategic." (Order at 11).

Alamillo's petition for rehearing was denied by the appellate court. This petition for leave to appeal follows.

-9-

## ARGUMENT

**This Court Should Grant Leave to Appeal to Provide Guidance to Lower Courts Regarding Whether (1) a Defendant's Unrebutted Allegation that He Disagreed With and Did Not Consent to His Counsel's Decision to Stipulate to Evidence at Trial States a Viable Confrontation Claim in the Context of a First-Stage Post-Conviction Petition; and (2) Whether the Requirement of an Affirmative Showing of An Objection to a Stipulation on the Record Applies to a Post-Conviction Claim of Confrontation Error, Where the Defendant Alleges He Disagreed with His Counsel's Decision to Stipulate to Evidence.**

In his *pro se* post-conviction petition, Pedro Alamillo argued that his counsel was ineffective for entering into a stipulation that admitted Alamillo made an inculpatory statement to police without Alamillo knowingly and intelligently waiving his constitutional right of confrontation. Alamillo noted in his petition that he made off-the-record allegations that he did not agree with his trial counsel's strategy regarding his alleged statement to police. Specifically, Alamillo contended that his trial counsel coerced him into testifying in a specific fashion during trial, despite Alamillo's statements to counsel that he did not make any statement to the police. (PC. 23-24, 35-36).

The appellate court affirmed the dismissal of Alamillo's post-conviction claim that his counsel was ineffective. (Order at 10-12). In reaching this conclusion, the court found this Court's decision in *People v. Phillips*, 217 Ill.2d 270, 840 N.E.2d 1194 (2005), to be dispositive, reasoning that Alamillo did not object to the stipulation at trial and that "defense counsel's agreement to stipulate to defendant's statement appears to have been strategic." (Order at 11). The court therefore found that "the record positively rebuts defendant's allegation of ineffective assistance of counsel in relation to his stipulation regarding [Alamillo's] inculpatory statement. (Order at 11-12).

In *Phillips*, this Court determined that "it is not necessary for either the [trial] court or

-10-

counsel to admonish a defendant about the implications and consequences of a stipulation, and defendant's explicit agreement to the stipulation on the record is not required where... (1) defense counsel's decision to stipulate appears to have been a matter of trial tactics and strategy and defendant does not object to counsel's decision, and (2) the State's entire case is not presented by stipulation, the defendant does present or preserve a defense, and the stipulation does not include a statement that the evidence is sufficient to convict." *Phillips*, 217 Ill.2d at 288. In so ruling, this court clarified and reaffirmed its holding in *People v. Campbell*, 208 Ill.2d 203, 221, 802 N.E.2d 1205 (2003), where this Court concluded that, absent any evidence on the record that the defendant disagreed with or objected to his counsel's decision to stipulate, because the stipulation was a matter of sound trial strategy, defense counsel could waive the defendant's right to confrontation, without running afoul of the confrontation clause.

*Phillips* and *Campbell*, however, both involve direct appeals, and do not address the reach or proper application of their holdings in the context of first-stage post-conviction proceedings. Thus, this Court's decisions in *Phillips* and *Campbell* leave unclear whether, in the post-conviction context, a defendant's unrebutted allegation that he disagreed with and did not consent to his counsel's decision to stipulate to evidence states a viable confrontation claim. It is also unclear whether the requirement of an affirmative showing of an objection to a stipulation on the record applies with equal force to a post-conviction claim of confrontation error, where the defendant alleges that he disagreed with his counsel's decision to stipulate.

In the case at bar, the defendant's allegation that he disagreed with and did not consent to his defense counsel's decision to stipulate to evidence was unrebutted by the record. This allegation is presumed to be true at a first-stage post-conviction proceedings. *People v. Coleman*, 183 Ill.2d 366, 381-82, 701 N.E.2d 1063 (1998). As *Phillips* and *Campbell* stand for the

-11-

proposition that counsel may waive a defendant's right of confrontation and stipulate to evidence, only so long as the defendant does not disagree with or dissent from that decision, then Alamillo's post-conviction allegation that he did not consent to the stipulation, stated a viable confrontation claim.

This Court should grant leave to appeal as its decisions in *Phillips* and *Campbell* leave unresolved the application of their holdings in the post-conviction context. Applying the principles of those decisions to the instant case, this Court should reverse and remand the matter for further post-conviction proceedings as Alamillo's unrebutted allegation, that he disagreed with and did not consent to his counsel's decision to stipulate to evidence, states a cognizable confrontation claim so as to survive dismissal on the pleadings.

## CONCLUSION

Pedro Alamillo, petitioner-appellant, respectfully requests that this Court grant leave to appeal.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

*Brett C. Zeeb*
BRETT C. ZEEB
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

-13-

## APPENDIX

Appellate Court Decision..................................................................................................A-1

Order denying petition for rehearing.............................................................................A-13

Affidavit of intent to file petition for leave to appeal.........................................................A-14

NOTICE
The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

_ZEEB_

FIRST DIVISION
February 6, 2006

No. 1-04-2456

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 00 CR 26406 |
| PEDRO ALAMILLO, | ) | |
| | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Following a bench trial, defendant, Pedro Alamillo, was convicted of attempted first degree murder (720 ILCS 5/8-4(a) (West 2000); 720 ILCS 5/9-1(a)(1)) and aggravated possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2000)), and sentenced to concurrent terms of 22 years' and 6 years' imprisonment, respectively. After unsuccessfully appealing his conviction and sentence for attempted first degree murder (see People v. Alamillo, No. 1-01-4021 (2003) (unpublished order under Supreme Court Rule 23)), defendant filed a *pro se* postconviction petition. The trial court summarily dismissed the petition as frivolous and patently without merit. Defendant contends on appeal that the trial court erred in summarily dismissing his petition because: (1) the court failed to review the petition within the requisite 90-day period; and (2) his petition stated

1-04-2456

the gist of a constitutional claim of ineffective assistance of counsel. We affirm.

The facts of this case are fully set forth in our initial order disposing of defendant's direct appeal. Here, we summarize only those facts necessary to resolve the claims raised in this appeal. On October 9, 2000, defendant stole a parked car with a child inside, and a police chase ensued. At trial, numerous eyewitnesses testified that, as defendant was stopped in traffic, Chicago police officer Eric Frenzel and other officers exited their cars and approached defendant's car on foot. When traffic cleared, defendant accelerated and swerved the car in the direction of the police officers. Officer Frenzel was in front of defendant's vehicle and fired his weapon, hitting defendant in the abdomen. Defendant was arrested after crashing the car into a building several blocks away. Defendant subsequently underwent surgery to remove the bullet.

At trial, defendant testified that he did not remember being questioned by detectives after surgery because he was in pain and had taken morphine, vicodin and zofran.[1] However, the parties stipulated that defendant made a statement to detectives while in the hospital. Although defense counsel refused to stipulate that defendant was not under the influence of any drugs because he was

---

[1]Defendant's medical records from the incident in question are included in the record on appeal.

- 2 -

1-04-2456

in the hospital, he agreed to stipulate that, at the time the statement was made, defendant was not under the influence of "self-induced" drugs. Defendant's statement, in summary, was that he drove toward the police officer in front of his car in an attempt to hit him. Defendant did not sign the statement after it was written. In rebuttal, Leslie Emert, defendant's nurse at the hospital, testified that she had not given defendant any medication, and that he was alert when she spoke with him.

The trial court found defendant guilty of attempted first degree murder of Officer Frenzel and aggravated possession of a stolen motor vehicle, and sentenced him as previously described in this order. On direct appeal, defendant contended that his attempted first degree murder conviction of Officer Frenzel was inconsistent with his acquittal of attempted first degree murder of another police officer, and that his sentence was erroneously enhanced. We affirmed the judgment of the trial court. Alamillo, No. 1-01-4021, order at 11. Thereafter, the supreme court denied defendant's petition for leave to appeal. People v. Alamillo, 205 Ill. 2d 591 (2003).

On April 6, 2004, defendant mailed a notarized pro se postconviction petition alleging ineffective assistance of trial and appellate counsel. Specifically, defendant alleged that his trial counsel was ineffective for: (1) failing to subject the State's case to meaningful adversarial testing and failing to

- 3 -

1-04-2456

file a motion to suppress his statement; (2) failing to
investigate and interview his treating doctors and nurses; (3)
asserting inconsistent arguments by stating, during opening
argument, that defendant's statement was accurate, then arguing
that the State could not prove intent; and (4) stipulating to
defendant's statement.  Defendant alleged that his appellate
counsel was ineffective for failing to raise those claims on
direct appeal.  The petition was file-stamped by the clerk on
April 9, 2004.  On July 8, 2004, in a written order, the trial
court dismissed the postconviction petition, specifically finding
defendant's claims frivolous and patently without merit.  This
timely appeal followed.

The question of whether a summary dismissal of a
postconviction petition was in error is reviewed *de novo*.  People
v. Coleman, 183 Ill. 2d 366, 388-89 (1998).

The Post-Conviction Hearing Act ("Act") provides a three-
stage process for a defendant to challenge constitutional
violations resulting in his conviction.  See 725 ILCS 5/122 *et*
*seq.* (West 2004); see also Coleman, 183 Ill. 2d at 378-79.  In
the first stage, the trial court has 90 days from the date the
petition is filed and docketed to review it, and determine
whether it is frivolous or patently without merit.  See 725 ILCS
5/122-2.1(a)(2) (West 2004); see also People v. Porter, 122 Ill.
2d 64, 86 (1988) (finding that the review period is mandatory,

- 4 -

1-04-2456

thus failure to meet the requirements renders summary dismissal of the petition void).[2]  If the trial court finds that the petition meets this threshold standard, or if the court fails to review the petition within 90 days, the petition proceeds to the second stage.  See 725 ILCS 5/122-2.1(b) (West 2004).

Defendant first contends that his *pro se* postconviction petition must be remanded for further proceedings because the trial court failed to comply with the 90-day statutory summary dismissal requirement (see 725 ILCS 5/122-2.1(a)(2) (West 2004)), where the trial court dismissed his petition 93 days after it was mailed.  The State responds that the trial court's dismissal was proper because its ruling was made 87 days after the petition was filed and docketed.

According to the State, this issue of when the requisite period of review commences is currently pending before the supreme court in People v. Brooks, No. 1-03-0586 (2004) (unpublished order under Supreme Court Rule 23), *appeal allowed* No. 99293.[3]  Unless, or until, the supreme court directs otherwise, we will follow the well-settled law that the requisite 90-day time period does not begin when the petition is mailed, but when it is filed and docketed.  See 725 ILCS 5/122-2.1(a)

---

[2] We note that at the time Porter was decided the requisite period was 30 days.

[3] Oral argument was scheduled for January 10, 2006.

- 5 -

1-04-2456

(West 2004); see also People v. Johnson, 232 Ill. App. 3d 882,
884 (1992) (finding that the trial court's requisite review
period "does not begin until the petition is actually on file
with the court"); People v. Mitchell, 221 Ill. App. 3d 979, 982
(1991) (finding that the date of filing is the date on which the
clerk file-stamps the petition and not the date the petition was
forwarded); People v. Floyd, 210 Ill. App. 3d 840, 843 (1991)
(finding that the "petition is not deemed to have been filed
until it passes into the actual physical possession of the
clerk," and that the "date of mailing is not controlling"). We
also note that this court determined that filing and docketing
are merely "ministerial acts performed by the clerk," and the
date of importance in computing the 90-day review period is the
filing date. See People v. Byers, 196 Ill. App. 3d 502, 509
(1990); see also People v. Tarnow, 249 Ill. App. 3d 797, 801
(1993).

In the instant case, defendant's petition was filed on April
9, 2004, and the trial court summarily dismissed it on July 8,
2004. As a result, the trial court reviewed and summarily
dismissed the petition within 90 days of the filing date.

Defendant next contends that the trial court erred in
dismissing his petition because he stated a constitutional claim
of ineffective assistance of trial counsel. Specifically,
defendant alleged that his trial counsel was ineffective for

1-04-2456

failing to investigate evidence; failing to file a motion to
suppress his alleged inculpatory statement; and stipulating to
his alleged inculpatory statement without waiver of his
confrontation rights.  The State responds that the trial court
properly dismissed defendant's petition as frivolous and patently
without merit because defendant failed to state the gist of a
constitutional claim.

In order to survive the first-stage of postconviction
proceedings, a defendant must allege a constitutional violation
necessitating relief under the Act.  People v. Smith, 326 Ill.
App. 3d 831, 839 (2001).  The defendant is merely required to
state the gist of a constitutional claim, which is a low
threshold demanding minimal detail.  People v. Jones, 341 Ill.
App. 3d 103, 106 (2003), citing People v. Edwards, 197 Ill. 2d
239, 244 (2001).  However, the defendant must provide affidavits,
records or other evidence to support the allegations.  See 725
ILCS 5/122-2 (West 2004).  "Unless positively rebutted by the
record, all well-pled facts are taken as true."  Smith, 326 Ill.
App. 3d at 839.  Allegations that are positively rebutted by the
record, however, aid in the determination of whether the
defendant's petition is frivolous or patently without merit.
Smith, 326 Ill. App. 3d at 840.

To successfully allege ineffective assistance of counsel,
the defendant must prove that his counsel's performance was both

1-04-2456

objectively deficient and prejudicial.  People v. Smith, 195 Ill.
2d 179, 187-88 (2000), citing Strickland v. Washington, 466 U.S.
668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).
To establish deficient performance, the defendant must overcome
the strong presumption that his attorney's conduct was within the
wide range of reasonable professional assistance and constituted
trial strategy.  Smith, 326 Ill. App. 3d at 841.  Furthermore, to
establish prejudice, the defendant must demonstrate that
"counsel's deficient performance rendered the trial result
unreliable."  People v. Moore, 356 Ill. App. 3d 117, 121 (2005).

Defendant first contends that his petition sufficiently
alleged that his trial counsel was ineffective for failing to
investigate medical evidence pertaining to the involuntariness of
his alleged inculpatory statement.  Our supreme court has held
that failure to interview witnesses may demonstrate ineffective
assistance of counsel.  Coleman, 183 Ill. 2d at 398.  The value
of the missing evidence and the closeness of the evidence
presented determine whether counsel's failure to investigate is
ineffective assistance.  Smith, 326 Ill. App. 3d at 853.

Here, defendant presented medical records, including a
"Medical Administration Record" listing the drugs morphine,
vicodin and zofran, to support his petition.  The record,
however, indicates that defendant's nurse denied administering
pain killers to him on the day his alleged inculpatory statement

- 8 -

1-04-2456

was taken.  In addition, defendant cannot show that, but for his
attorney's failure to investigate this medical evidence, there is
a reasonable probability that he would not have been found guilty
(see <u>People v. Smith</u>, 341 Ill. App. 3d 530, 544 (2003)), in large
part due to the eyewitness testimony submitted at trial.  We find
that the record positively rebuts defendant's allegation of
ineffective assistance of counsel in relation to his failure to
investigate medical evidence.  Accordingly, this allegation was
insufficient to survive summary dismissal.

Next, defendant contends that his petition sufficiently
alleged that his trial counsel was ineffective for failing to
file a motion to suppress his alleged inculpatory statement.
Defendant must overcome the strong presumption that his
attorney's decision not to file a motion to suppress was
reasonable and constituted trial strategy.  See <u>Smith</u>, 326 Ill.
App. 3d at 841.  Where the motion would have been futile, trial
counsel's failure to file a motion to suppress will not establish
ineffective assistance.  <u>People v. Patterson</u>, No. 98641, slip op.
at 22 (December 15, 2005).  Therefore, the relevant question is
whether the trial court would have granted a motion to suppress
defendant's statement.  See <u>Patterson</u>, No. 98641, slip op. at 22.
We, however, note that at this stage of the postconviction
proceedings we are not to determine whether defendant's statement
was voluntary, but rather whether defendant's allegation is

1-04-2456

clearly rebutted by the record.  See <u>Smith</u>, 326 Ill. App. 3d at
844.

Again, the record rebuts defendant's allegation that he was
under the influence of medication when he made his statement.
Instead, the attending nurse testified that she did not give
defendant any pain killers on the day his statement was given.
Moreover, the evidence against defendant was overwhelming, with
or without his inculpatory statement.  As a result, defendant
cannot establish that, but for counsel's failure to file a motion
to suppress, he would not have been convicted.  See <u>Patterson</u>,
No. 98641, slip op. at 22 (finding that a defendant must show
reasonable probability that the motion would have been granted
and would have affected the trial's outcome).  Therefore, this
allegation was insufficient to survive summary dismissal.

Finally, defendant contends that his petition sufficiently
alleged that his trial counsel was ineffective for stipulating to
defendant's inculpatory statement absent affirmative waiver of
his right to confrontation.  In addition, defendant alleged in
his petition that his appellate counsel was ineffective for
failing to raise this issue on appeal.  Defendant's allegation
lacks merit in light of <u>People v. Phillips</u>, No. 99568 (December
1, 2005), which held that

> "it is not necessary for either the court or
> counsel to admonish a defendant about the

1-04-2456

> implications and consequences of a
> stipulation, and defendant's explicit
> agreement to the stipulation on the record is
> not required where *** (1) defense counsel's
> decision to stipulate appears to have been a
> matter of trial tactics and strategy and
> defendant does not object to counsel's
> decision, and (2) the State's entire case is
> not presented by stipulation, the defendant
> *does* present or preserve a defense, and the
> stipulation does not include a statement the
> evidence is sufficient to convict." (Emphasis
> in the original.)  <u>Phillips</u>, No. 99568, slip
> op. at 14.

In the instant case, defendant did not object to the
stipulation at trial.  Defense counsel's agreement to stipulate
to defendant's statement appears to have been strategic, where he
instead pursued other methods to support his client's innocence.
In addition, because the stipulation was not tantamount to a
guilty plea where his counsel presented a defense and the
stipulation did not encompass the entire trial, we find that
defendant's sixth amendment right to confrontation was not
violated.  We, therefore, find that the record positively rebuts
defendant's allegation of ineffective assistance of counsel in

1-04-2456

relation to his stipulation regarding defendant's inculpatory statement. As a result, we find that the trial court did not err in finding this allegation frivolous and patently without merit.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

BURKE, J., with CAHILL, P.J., and McBRIDE, J., concurring.

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 1-04-2456 |
| | ) | |
| PEDRO ALAMILLO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

<u>O R D E R</u>

IT IS HEREBY ORDERED THAT Defendant-Appellant's petition for rehearing is denied.

_____
JUSTICE

_____
JUSTICE

_____
JUSTICE

ORDER ENTERED

MAY 0 1 2006

APPELLATE COURT, First District

RECEIVED

MAY 0 2 2006

*DOCKETING DEPARTMENT*
State Appellate Defender, 1st District

DATED:

A-13

No. 1-04-2456

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| -vs- | ) | No. 00 CR 26406. |
| PEDRO ALAMILLO, | ) | Honorable |
| Petitioner-Appellant. | ) | Vincent M. Gaughan, Judge Presiding. |

**AFFIDAVIT OF INTENT TO FILE PETITION FOR LEAVE TO APPEAL**

Brett C. Zeeb, Assistant Appellate Defender, states on oath:

1.    On February 6, 2006, this Court affirmed the judgment of the circuit court.

Appellant petitioned this Court for rehearing. Rehearing was denied on May 1, 2006.

2.    On behalf of appellant, I intend to file a petition for leave to appeal within 35 days

of this Court's denial of rehearing as provided for in Supreme Court Rule 315(b).


Respectfully submitted,

*Brett C. Zeeb*

BRETT C. ZEEB
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

SUBSCRIBED AND SWORN TO BEFORE ME
on May 5, 2006.

NOTARY PUBLIC

Official Seal
Alicia M. Corona
Notary Public State of Illinois
My Commission Expires 05/21/08

A-14



857 N.E.2d 674 (Table)                                                                                          Page 1
221 Ill.2d 644, 857 N.E.2d 674 (Table), 306 Ill.Dec. 275
**(Cite as: 221 Ill.2d 644)**

People v. Alamillo
Ill. 2006.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
        Supreme Court of Illinois
      People of the State of Illinois
            v.
         **PedroAlamillo**
         **NO. 102620**

     SEPTEMBER TERM, 2006
      September 27, 2006

Lower Court: No. 1-04-2456

Disposition: Denied (Burke, J., took no part.).

Ill. 2006.
People v. Alamillo
221 Ill.2d 644, 857 N.E.2d 674 (Table), 306
Ill.Dec. 275

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT G